Michael J. Nader, SBN 200425
michael.nader@ogletree.com
Spencer S. Turpen, SBN 296483
spencer.turpen@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA  95814
Telephone:     916-840-3150
Facsimile:     916-840-3159

Attorneys for Defendant C & K MARKET, INC.,
DBA SHOP SMART AND RAY'S FOOD
PLACE

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ALLEN PHLLIPS, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>   vs.<br><br>C & K MARKET, INC., DBA SHOP SMART and RAY'S FOOD PLACE, an Oregon corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.<br><br>**DEFENDANT C & K MARKET, INC., DBA SHOP SMART AND RAY'S FOOD PLACE'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[Filed concurrently with Civil Cover Sheet, Corporate Disclosure Statement, and Declarations of John Strange, Zachary Minute, and Spencer S. Turpen in Support of Removal]<br><br>[Humboldt County Superior Court Case No. CV2401836]<br><br>Action Filed:  09/30/2024<br>Trial Date:   TBD |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF**

**CALIFORNIA AND TO PLAINTIFF ERIC ALLEN PHLLIPS AND HIS ATTORNEYS OF**

**RECORD:**

   PLEASE TAKE NOTICE THAT Defendant C & K MARKET, INC., DBA SHOP SMART

AND RAY'S FOOD PLACE ("Defendant"), by and through the undersigned counsel, hereby

removes the above-entitled action from the Superior Court of the State of California for the County

of Humboldt to the United States District Court for the Northern District of California pursuant to

28 U.S.C. Sections 1332, 1441, 1446 and 1453.

1    In support of such removal, Defendant states as follows:

2        1.    Defendant removes this action on the grounds that: (a) there is complete diversity of

3    citizenship between Plaintiff Eric Allen Phillips ("Plaintiff"), a citizen of the State of California,

4    and Defendant, a citizen of the State of Oregon; and (b) the amount in controversy exceeds the

5    jurisdictional minimum of $75,000 set forth in Section 1332(a).

6        2.    Alternatively, Plaintiff's claims, as alleged in the Complaint, are removable under

7    the Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d)) ("CAFA") because: (a) there are at

8    least 100 class members in the putative class as defined by the Complaint; (b) the class claims

9    place an amount in controversy ("AIC") of more than $5 million; and (c) minimum diversity exists.

10   28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

11

12   **I.    THE STATE COURT ACTION**

13       3.    On September 30, 2024, Plaintiff, by and through his attorney, filed a civil action in

14   the Superior Court of the State of California for the County of Humboldt, entitled: *ERIC ALLEN*

15   *PHILLIPS, an individual, on his own behalf and on behalf of all others similarly situated, Plaintiff,*

16   *v. C & K MARKET, INC., DBA SHOP SMART and RAY'S FOOD PLACE, an Oregon corporation;*

17   *and DOES 1 through 100, inclusive, Defendants* (Case No. CV2401836). (Declaration of Spencer

18   S. Turpen ("Turpen Decl.") ¶2 Ex. A [Pl.'s Comp.].)

19       4.    The Plaintiff's Class Action Complaint asserts individual and class claims for: (1)

20   Failure to Pay Overtime (Cal. Labor Code §§510, 558, 1194, 1194.3, 1198; Wage Order No. 7); (2)

21   Failure to Pay Minimum Wages (Cal. Labor Code §§1194, 1197, 1197.1, 1198, 119; Wage Order

22   No. 7); (3) Failure to Provide Timely Off Duty Meal Periods (Cal. Labor Code §§226.7, 512; IWC

23   Wage Order No. 7); (4) Failure to Provide Rest Periods (Cal. Labor Code§226.7; IWC Wage Order

24   No. 7); (5) Failure to Maintain Records and Provide Accurate Itemized Wage Statements (Cal.

25   Labor Code §226; Wage Order No. 7); (6) Failure to Pay Wages Due Upon Termination (Cal.

26   Labor Code §§201- 203; Wage Order No. 7); (7) Failure to Reimburse Business Expenses (Cal.

27   Labor Code §2802); (8) Reporting Time Pay (Wage Order No. 7); (9) Unlawful Deduction of

28   Wages (Cal. Labor Code §221); (10) Failure to Pay All Sick Leave Wages When Due (Cal. Labor

1 Code §§201-204, 218, 218.5, 233, 245, 246 et seq.);  (11) Failure to Allow Inspection of

2 Employment Records (Cal. Labor Code §1198.5); and (12) Unfair Competition (Cal. Bus. & Prof.

3 Code §§17200 et seq.). (Pl.'s Comp.)

4      5.     On January 22, 2025, counsel for Defendant accepted service of the Summons and

5 Complaint via Notice and Acknowledgment of Receipt. (Turpen Decl. ¶4 Ex. B [Notice and

6 Acknowledgment of Receipt and attached papers.])

7      6.     On February 20, 2025, Defendant filed and served its Answer to Plaintiff's

8 Complaint. (Turpen Decl. ¶5 Ex. C [Def.'s Answer.])

9      7.     As set out more fully below, this action is one over which this Court has original

10 jurisdiction and is one that may be removed to this Court under 28 United States Code §§ 1332(a),

11 1441(a) and 1446, because this matter is between citizens of different states and the amount in

12 controversy based on Plaintiff's claims alone is greater than $75,000, as set forth below.

13      8.     In addition, Plaintiff's claims, as alleged in the Complaint, are also removable under

14 CAFA because there are over 100 putative class members, the combined claims of all class

15 members exceed $5 million exclusive of interest and costs; and minimum diversity exists between

16 the Parties.

17 **II.   <u>REMOVAL IS TIMELY</u>**

18      9.     The time to remove under 28 U.S.C. section 1446(b) does not begin to run until

19 receipt by the Defendant, through service or otherwise, of a pleading, motion, order or other paper

20 from which it may first be ascertained that the case is one which is or has become removable.

21 *Harris v. Bankers Life & Cas. Co*., 425 F.3d 689, 694 (9th Cir. 2005). Defendant is not obligated to

22 investigate or develop additional facts as to removability upon receipt of the Complaint. *Id.*

23 ("[N]otice of removability...is determined through examination of the four corners of the applicable

24 pleadings, not through subjective knowledge or a duty to make further inquiry" by Defendant.).

25      10.    The Ninth Circuit has repeatedly upheld the *Harris* decision in subsequent cases. In

26 *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit

27 emphasized that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts"

28 as to removability. In *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir.

2013), the Court explained that when defendants do conduct such an investigation, 28 U.S.C. §§ 1441 and 1446, "read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information." Any argument that Defendant could have removed a case earlier based on information contained within its own records fails.

11.     Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class.

12.     The Complaint does not provide an estimate as to the number of putative class members, their average hourly rate of pay, the frequency of alleged violations of the California Labor Code, nor estimates as to Plaintiff's own experiences. *See*, Complaint, *passim*. Accordingly, the time to remove has not yet begun and Defendant may remove based upon its own investigation. *Harris, supra*, 425 F.3d at 694.

13.     Accordingly, Defendant's removal is timely.

## III.   PLAINTIFF'S COMPLAINT IS REMOVABLE UNDER DIVERSITY JURISDICTION

14.     The basis for removal is that this Court has original jurisdiction of this action under 28 U.S.C. §1332 and it is one which may be removed to this Court by Defendant, pursuant to 28 U.S.C. §1441(b), in that it is a civil action wherein the amount in controversy exceeds $75,000, exclusive of interests and costs, and is a civil action between citizens of different states such that complete diversity exists. Removal based on Plaintiff's individual claims is appropriate, even though the Complaint is filed as a class action, so long as the amount in controversy of Plaintiff's individual claims "exceeds the sum or value of $75,000." *See, Patel v. Nike Retail Services, Inc*., 58 F. Supp. 3d 1032 (N.D. Cal. 2014) (recognizing that removal based on Patel's individual claims appropriate in wage-and-hour class action complaint).

15.     Under 28 U.S.C. section 1446(a), a defendant seeking to remove a case to federal court need only file a "notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). This language "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil

4

1    Procedure" and that "[a] statement short and plain need not contain evidentiary submissions." *Id*. at

2    84, 87.

3        16.    Both of the requirements for subject matter jurisdiction based on diversity

4    jurisdiction are met here and this case is removable to this Court because: (a) there is complete

5    diversity of the parties; Plaintiff is a citizen of California, and Defendant is a citizen of Oregon; and

6    (b) the AIC exceeds $75,000.

7        **A.**    **The Citizenship of the Parties is Diverse.**

8            **1.**    **Plaintiff is a Citizen of California.**

9        17.    For diversity purposes, an individual is a "citizen" of the state in which he is

10    domiciled. *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983). An

11    individual's domicile is the place he resides with the intention to remain or to which he intends to

12    return. *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

13        18.    As set forth in the Complaint, Plaintiff "is a resident of Redway, California." (Pl.'s

14    Comp. ¶10.) As such, Plaintiff is domiciled in and for purposes of diversity jurisdiction is a citizen

15    of the State of California.

16            **2.**    **Defendant is Not a Citizen of California.**

17        19.    Pursuant to United States Code, Title 28, Section 1332(c), "a corporation shall be

18    deemed to be a citizen of any State by which it has been incorporated and of the State where it has

19    its principal place of business." The Supreme Court has established the proper test for determining

20    a corporation's principal place of business for purposes of diversity jurisdiction. *Hertz Corp. v.*

21    *Friend*, 559 U.S. 77 (2010) (rejecting all prior tests in favor of the "nerve center" test). The Court

22    held that the "'principal place of business' [as contained in Section 1332(c)] is best read as

23    referring to the place where a corporation's officers direct, control, and coordinate the

24    corporation's activities." *Id*. at 92-93. The Court further clarified that the principal place of

25    business was the place where the corporation "maintains its headquarters - provided that the

26    headquarters is the actual center of direction, control and coordination." *Id*. at 93.

27        20.    Here, Defendant was, at the time of the filing of this lawsuit, and still is, a

28    corporation incorporated under the laws of Oregon. (Declaration of John Strange ("Strange Decl.")

¶3.) Defendant's principal place of business and the locations where its executive and senior management personnel coordinate its corporate activities is in Medford, Oregon. (Strange Decl. ¶4.) Therefore, at all material times, Defendant has been a citizen of Oregon.

21.    The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. See 28 U.S.C. § 1441(b)(1); *see also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that, in determining whether diversity of citizenship exists, only the named defendants are considered).

22.    Thus, complete diversity exists between Plaintiff and Defendant.

**B.    The Amount in Controversy Exceeds $75,000.**

23.    "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. Legal certainty of the amount in controversy is not required. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. Aug. 27, 2013) ("[a] defendant seeking removal . . . must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum"). "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).

24.    To meet this relatively low burden regarding the amount in controversy, a defendant may rely on plaintiff's allegations, which are assumed to be true, and provide supplementary facts or numbers upon which the AIC can reasonably be calculated. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (allowing the use of "Defendant's own numbers" for "purposes of analyzing the amount in controversy"). In determining whether the jurisdictional minimum is met, the Court considers all recoverable damages, including compensatory damages, emotional distress damages, punitive damages, statutory penalties, and attorney's fees. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347–48 (1977); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998).

25.    Removal is proper if, from the allegations in the Complaint and the Notice of

6

1   Removal, it is more likely than not that the value of Plaintiffs' claims place an AIC that exceeds

2   $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Luckett v. Delta*

3   *Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

4         26.    Defendant's notice of removal "need not contain evidentiary submissions." *See Dart*

5   *Cherokee Basin Operating Co.*, LLC, 574 U.S. at 84. In showing the amount in controversy,

6   Defendant "may rely on reasonable assumptions." *See Arias v. Residence Inn*, 936 F.3d 920, 922

7   (9th Cir. 2019). The amount in controversy is "simply an estimate of the total amount in dispute . . .

8   [and] [i]n that sense, the amount in controversy reflects the maximum recovery [a] plaintiff could

9   reasonably recover" on a complaint at the time of removal. *Id*. at 927. Moreover, "[a]n assertion

10  that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because

11  it is equally possible that the damages might be less than the requisite amount." *Id*. (quotation

12  marks omitted).

13        27.    It is permissible for Defendant, when the Complaint does not provide clear

14  indications of the amount in controversy, to rely on employee data and reasonably assumed

15  violation rates based upon the Complaint when determining the amount in controversy. *See Arias*,

16  936 F.3d at 927. Defendant may rely on "a chain of reasoning that includes assumptions." *Ibarra v.*

17  *Manheim Invs., Inc*., 775 F.3d at 1199. Defendant does not need to "provide evidence proving the

18  assumptions correct." *Arias*, 936 F.3d at 927. Instead, "assumptions made part of the defendant's

19  chain of reasoning need not be proven; they instead must only have 'some reasonable ground

20  underlying them.'" *Id*. (citation omitted.)

21        28.    While Defendant denies any and all liability to Plaintiff, based on a conservative

22  good faith estimate of the value of the alleged damages in this action, the AIC in this case exceeds

23  $75,000, exclusive of interest and costs.

24        **C.**    **The Claims at Issue in Determining the Amount in Controversy in this Action.**

25        29.    In the Complaint, Plaintiff seeks, among other things, damages for (1) allegedly

26  unpaid minimum and straight time wages; (2) allegedly unpaid overtime wages; (3) allegedly

27  unpaid meal period premiums; (4) allegedly unpaid rest period premiums; (5) allegedly

28  unreimbursed business expenses; (6) allegedly unpaid waiting time penalties; (7) penalties for

allegedly failing to provide accurate wage statements; (8) penalties plus 25% of the amount withheld for allegedly violating Labor Code section 204; and (9) attorney's fees and costs. As discussed below, the amount in controversy well exceeds the $75,000 amount in controversy requirement.

30.     Moreover, Plaintiff alleges that the Defendant engaged in a "systematic failure to: pay overtime wages, minimum wages, provide meal and rest breaks (or pay the statutory compensation due), issue accurate wage statements, pay all wages upon termination, reimburse business expenses, pay reporting time pay, sick pay and unlawful deduction of wages. (Compl. ¶1.) Plaintiff also alleges that Defendant knowingly and willfully engaged in a systemized and pervasive campaign of activity to damage Plaintiff and the Class. (Id. ¶¶16, 21(c).) And Plaintiff alleges that the harm applied uniformly to all putative class members as a result of Defendant's uniform policies and practices. (Id. ¶¶21(b), 27, 99.)

### D.     <u>The Relevant Period and Plaintiff's Data</u>

31.     The general statute of limitations governing civil actions for unpaid wages is three years for wage liabilities created by statute. Ca. Civ. Pro. §338(a); *Cuadra v. Millan*, 17 Cal. 4th 855, 859 (1998), disapproved on other grounds in *Samuels v. Mix*, 22 Cal. 4th 1, 91. Nevertheless, the limitation for actions under California's Unfair Competition Law (UCL) is four years. Cal. Bus. & Prof. Code §17200 et seq. Here, Plaintiff has alleged a UCL claim alongside his statutory wage claims. As such, the relevant statutory period for Plaintiff's unpaid wage claims (which normally carry three-year statutes of limitations) begins four years prior to the filing of the Complaint – from September 30, 2020 to the present (i.e., the Relevant Period).

32.     According to Defendant's business records, Plaintiff worked for Defendant from November 14, 2022 to March 17, 2024, as an hourly non-exempt full-time employee, which is shorter than and within the Relevant Period. (Declaration of Zachary Minute ("Minute Decl.") ¶¶6-7.)

33.     During the Relevant Period, Plaintiff worked 17 months for Defendant. (Minute Decl. ¶15.)

34.     Defendant's business records confirm that during the Relevant Period, Plaintiff

8

worked 323 shifts. (Minute Decl. ¶11.)

35.    During the Relevant Period, Plaintiff worked 294 shifts lasting at least 3.501 hours in length. (Id. at ¶12.)

36.    During the Relevant Period, Plaintiff worked 260 shifts lasting at least 5.01 hours in length. (Id. at ¶13.)

37.    During the Relevant Period, Plaintiff worked 71 workweeks. (Id. at ¶14.)

38.    During the Relevant Period, the average hourly rate of pay for Plaintiff was $15.58/hour. (Id. at ¶16.)

39.    During the 1-year statutory period for wage statement claims beginning September 30, 2023, to the present, Plaintiff worked 14 biweekly payroll periods. (Id. at ¶17.)

40.    In summary, Defendant's review of its business records confirms the following relevant statistics:

| Relevant Period: | September 30, 2020 to present |
|---|---|
| Total Shifts Worked by Plaintiff | 323 |
| Shifts lasting at least 3.501 | 294 |
| Shifts lasting at least 5.01 | 260 |
| Total workweeks by Plaintiff | 71 |
| Months worked by Plaintiff | 17 |
| Total biweekly pay periods by Plaintiff during 226 period | 14 |
| Average hourly wage for Plaintiff | $15.58 |

(Minute Decl. ¶¶11-17.)

**E.    Calculating the Amount in Controversy for Removal**

      **1.    Plaintiff's Unpaid Minimum Wage Claim Places at Least $4,424.72 to the Amount in Controversy.**

41.    Plaintiff claims Defendant violated Labor Code sections 1194 and 1194.2, and the applicable Industrial Welfare Commission ("IWC") Wage Orders for failing to compensate him for all minimum wages for all hours worked. (Pl.'s Comp. ¶¶66-73.)

42.    Plaintiff alleges "it was the practice and policy of Defendant to pay employees less than minimum wage rates due to off the clock work, rounding of hours and the lack of proper meal/rest breaks." (Pl.'s Comp. ¶¶45). According to Plaintiff, he was required to regularly perform

9

1    compensable tasks off-the-clock for which he did not receive any compensation." (Id. at ¶46.)

2    Plaintiff also alleges that "[d]uring this period, it was the practice and policy of Defendant to not

3    pay employees' minimum wages." (Id. at ¶42.)

4        43.    California Labor Code section 1197 requires that employers pay their non-exempt

5    employees an hourly wage that is at least the applicable minimum wage set by the Industrial

6    Welfare Commission or by statute. Cal. Lab. Code § 1197.

7        44.    Here, Plaintiff's allegations of "off-the-clock" work support a 100% violation rate.

8    *See e.g., Lopez v. First Student, Inc*., 427 F.Supp.3d 1230, 1236 (C.D. Cal. 2019) ("Plaintiffs'

9    failure to limit their allegations in any meaningful way – and indeed, the allegations suggest the

10   systematic and expansive nature of the [violations] – justifies Defendants' assumptions of a 100%

11   violation rate and maximum recovery."); *Ramirez v. Carefusion Res., LLC*, No. 18-CV-2852-BEN-

12   MSB, 2019 WL 2897902, at *4 (S.D. Cal. July 5, 2019); *Vikram v. First Student Mgmt., LLC*, 2017

13   WL 4457575, at *4 (N.D. Cal. October 6, 2017) (finding reasonable defendant's 100% violation

14   rate assumption because of plaintiff's lack of evidence to the contrary and allegations suggesting

15   the off-the-clock work occurred every day); *Muniz v. Pilot Travel Centers LLC*, 2007 WL

16   1302504, at *4 (C.D. Cal. May 1, 2007) (holding that, because plaintiff included no fact-specific

17   allegations regarding overtime, a 100% estimation for labor code violations for the putative class is

18   proper).

19       45.    Plaintiff's allegations also support the assumption that he experienced at least 2

20   hours of unpaid (off-the-clock) wages at his straight time rate for each week that he worked. *See*

21   *e.g., Mendoza v. OSI Indus LLC*, 2022 WL 4291327 at *4-5, EDCV 22-1202 JGB (SPx) (C.D.

22   Cal., Sept. 16, 2022) (denying remand and accepting as reasonable the removing defendant's

23   assumption of 5 unpaid overtime hours per and 5 unpaid minimum wage hours per week and per

24   putative class member based on the plaintiff's allegation of a "systematic, company-wide policy

25   and practice" to not pay wages and where the plaintiff failed to specify a violation rate or offered

26   evidence of a rate lower than that assumed by Defendant as reasonable); *Vasquez v. Randstad US,*

27   *L.P*., No. 17-cv-04342-EMC, 2018 WL 327451, at *4 (N.D. Cal. Jan. 9, 2018) (finding defendants'

28   assumption of 2.5 hours per employee per week was reasonable for Minimum Wage claim

damages calculation where plaintiff alleged that defendants had a "policy and practice" of requiring off-the-clock work).

46.      Based upon the conservative estimate that Plaintiff is allegedly entitled to at least 2 hours of unpaid (off-the-clock) wages at his straight time rate for each week that Plaintiff worked and applying his average hourly rate of $15.58 in effect during the Relevant Period, the amount of unpaid wages in controversy during the Relevant Period is at least $2,212.36 ((71 * $15.58) *2) = $2,212.36). (Minute Decl. ¶27.)

47.      Under California Labor Code section 1194.2, an employee who receives less than the minimum wage can recover liquidated damages in the amount of the unpaid minimum wage plus interest. Actions to recover such damages are subject to the same statute of limitations as the action for wages from which the liquidated damages arise. Cal. Labor §1194.2(a).

48.      Pursuant to Labor Code § 1194.2, Plaintiff also seeks to recover "liquidated damages" in amounts equal to the amounts of unpaid minimum wages. (Pl.'s Comp. ¶71.) Therefore, the amount of unpaid minimum wages is multiplied by two to include liquidated damages in calculating the amount in controversy. ($2,212.36 * 2 = $4,424.72). (Minute Decl. ¶27.)

49.      In sum, Defendant estimates Plaintiff is claiming at least $4,424.72 in unpaid (off-the-clock) wages at his straight time rate and liquidated damages for purposes of calculating the amount in controversy.

## 2.    Plaintiff's Unpaid Overtime Claim Places at Least $654.36 to the Amount in Controversy.

50.      Plaintiff claims Defendant violated Labor Code sections 510 and 1198, and the applicable IWC Wage Orders by failing to compensate him for all overtime hours worked. (Pl.'s Comp. ¶¶56-65.)

51.      Plaintiff alleges "[t]hroughout" the Relevant Period Defendant "required Plaintiff and the Class to regularly perform compensable tasks pre- and post-shift of the clock for which they did not receive any compensation." (Pl.'s Comp. ¶40.) Plaintiff relies on the same allegations as his claim for unpaid minimum wages including having to perform work after clocking out for

11

the workday and being interrupted on meal breaks. (Id. at ¶40.) Plaintiff further alleges "at all times during the relevant time period, Plaintiff and the Class routinely worked schedules such that they were due pay at overtime rates" and that "[d]uring this period, it was the practice and policy of Defendant to not pay employees overtime wages." (Id. at ¶41.)

52.     Like the above, Plaintiff's allegations support a 100% violation rate and the assumption that at least 2 overtime wage violation occurred for each week that Plaintiff worked. *See e.g., Lopez*, 427 F. Supp. 3d at p. 1236; *Ramirez*, 2019 WL 2897902, at *4; *Vikram*, 2017 WL 4457575, at *4; *Muniz*, 2007 WL 1302504, at *4; *see also Bryan v. Wal-Mart Stores, Inc*., 2009 WL 440485, at *2 (N.D. Cal. Feb. 23, 2009) (denying remand where "Defendants estimate[d] that at least 500 individuals were required to work 2.5 hours of overtime per week"); *Cavada v. Inter-Cont'l Hotels Grp., Inc*., No. 19-cv-1675-GPC-BLM, 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019) (denying remand in part because assumption of two hours unpaid overtime per workweek was reasonable when plaintiff alleged "pattern and practice").

53.     Based upon the conservative estimate that Plaintiff is allegedly entitled to at least 2 hours of unpaid overtime for every workweek with shifts over 8 hours, the amount of unpaid overtime wages in controversy during the Relevant Period is at least $654.36 ($15.58 *1.5 = $23.37/hr) * 28 assumed hours of unpaid overtime = $654.36)). (Minute Decl. ¶28.)

### 3.   Plaintiff's Meal Period Claim Places at Least $2,430.48 to the Amount in Controversy.

54.     Plaintiff claims that Defendant violated Labor Code section(s) 226.7 and 512, and the applicable Industrial Welfare Commission ("IWC") Wage Orders by failing to provide meal breaks and premium compensation in lieu thereof. (Pl.'s Compl. ¶¶74-87.)

55.     California Labor Code section 512, subdivision (a), provides that employers must provide meal periods, generally, for employees who work more than five hours per day, and that the meal period must be an uninterrupted 30 minutes where the employee is free from all duties. Labor Code section 226.7 provides that employers who fail to provide a meal period are subject to a premium payment of one hour's wages to the employee.

56.     Plaintiff alleges that "Plaintiff and the Class members were routinely not afforded

proper meal breaks…[m]eal breaks were routinely interrupted and/or not afforded…, and [t]hat on days when Plaintiff and Class members worked 10–12-hour shifts, they were not afforded second meal breaks." (Pl.'s Comp. ¶47.)

57.    Here, Plaintiff's allegations support a 100% violation rate. "A 100% violation rate is proper when the plaintiff's complaint alleges that the defendant always engages in labor violations."; *Feltzs v. Cox Communs. Cal., LLC*, No. SACV192002, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate); *Giannini v. Nw. Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *3 (N.D. Cal. 2012) (applying 100% "violation rate" based on allegations that defendant "routinely" failed to provide meal periods); *Stevenson v. Dollar Tree Stores, Inc*., 2011 WL 4928753, *3-4 (E.D. Cal. 2011) (finding defendant's calculation of potential missed meal period damages at 100% of the shifts was appropriate where plaintiff alleged that class members were routinely denied meal periods or were not compensated for meal periods.).

58.    Even though Defendant could have relied on a 100% violation rate, it conservatively applied a 60% violation rate during the Relevant Period — meaning for every 5 shifts that Plaintiff worked more than 5 hours long, Defendant assumed 3 meal break violations. *See, Sanchez v. Abbott Labs*., No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *4-5 (E.D. Cal. Jun. 30, 2021) (finding a 60% violation rate for meal break claims to be appropriate based on the complaint's "pattern and practice" allegation that resulted in unpaid meal and rest period premiums to some "but not all" class members). For each violation, Defendant applied a one-hour premium wage amount equal to the Plaintiff's average base hourly rate of pay. At the $15.58 rate, the amount of missed meal period premiums in controversy during the Relevant Period is $2,430.48. ((260 * 60%) * $15.58 = $2,430.48). (Minute Decl. ¶29.)

### 4.    Plaintiff's Rest Period Claim Places at Least $2,748.31 to the Amount in Controversy.

59.    Plaintiff alleges that Defendant violated Labor Code sections 226.7 and 512, and the applicable IWC Wage Orders by failing to provide rest breaks and premium compensation in lieu thereof. (Pl.'s Comp. ¶¶88-93.)

13

60.     Plaintiff alleges "Plaintiff and the Class members were routinely not afforded second rest breaks" and "[a]t times, Plaintiff and Class members had to work during their rest periods." (Pl.'s Comp. ¶48.) Plaintiff further alleges "Plaintiff and Class members were only afforded 1 rest break per day despite working at least 8 hours per day." (Id.)

61.     Like the above, Plaintiff's allegations support a 100% violation rate. *See, e.g., Feltzs*, 2020 WL 133687, at *4; *Giannini*, 2012 WL 1535196, at *3; *Stevenson*, 2011 WL 4928753, *3-4.

62.     Even though Defendant could have relied on a 100% violation rate, it conservatively applied a 60% violation rate during the Relevant Period — meaning that for every 5 shifts that Plaintiff worked at least 3.5 hours long, Defendant assumed 3 rest break violations. *See, Abbott Labs.*, 2021 WL 2679057, at *4-5 (E.D. Cal. Jun. 30, 2021). For each violation, Defendant applied a one-hour premium wage amount equal to the Plaintiff's average base hourly rate of pay. At the $15.58 rate, the amount of missed rest period premiums in controversy during the Relevant Period is $2,748.31. ((294 * 60%) * $15.58 = $2,748.31). (Minute Decl. ¶30.)

### 5.     Plaintiff's Unreimbursed Business Expense Claim Places at Least $850.00 to the Amount in Controversy.

63.     Plaintiff contends Defendant violated Labor Code section 2802 by failing "to reimburse Plaintiff and Class members with their necessary business expenses, such as cell phone and vehicle expenses." (Id. at ¶51.) Plaintiff alleges that "Plaintiff and the Class were required to use their cell phones for group chat texts and calls from their managers" and that "Defendant maintained a practice of not reimbursing Plaintiff and Class Members for their work-related expenses that they incurred in using their cell phones and vehicles for work-related purposes." (Id. at ¶114.)

64.     California Labor Code section 2802(a) states that an employer shall indemnify an employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of the employee's duties. Like unpaid minimum wages, overtime wages, and premium wages, business expenses are recoverable as restitution under California Business & Professions Code section 17200. *See Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 367

14

(2017) (citing *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000)); *see also Harris v. Best Buy Stores, L.P.*, 2016 WL 4073327, at *10 (N.D. Cal. 2016).

65.     According to the U.S. Bureau of Labor Statistics, Consumer Price Index, for the period of October 2020 to October 2024 the average monthly price for wireless telephone services was $47.00 per month. (Turpen Decl. ¶ 8 Ex. E.)

66.     Defendant reasonably assumed $50.00 per month for alleged unpaid business expenses. (Turpen Decl. ¶ 8.)

67.     During the Relevant Period, Plaintiff worked approximately 17 months. (Minute Decl. ¶15.)

68.     Plaintiff alleges Defendant failed to reimburse him for all his necessary work-related expenses during the relevant period. (Pl.'s Comp. ¶18.)

69.     To calculate the value of the assumed unpaid business expenses allegedly owed to Plaintiff for purposes of calculating the amount in controversy, Defendant multiplied the number of months in which the Plaintiff worked for Defendant. (17 * $50.00 = $850.). In sum, the amount in controversy for this claim is approximately $850. (Minute Decl. ¶34.)

**6.     Plaintiff's Failure to Furnish Accurate Itemized Wage Statement Claim Places at Least $1,350.00 to the Amount in Controversy.**

70.     Plaintiff alleges "[t]hroughout the Class Period, Defendant intentionally and knowingly provided Plaintiff and other members of the Class with weekly itemized wage statements containing inaccurate information regarding the wages earned by Plaintiff and members of the Class in that the payments owed to Plaintiff and the members of the Class for overtime wages due to off the clock work, minimum wages, premium pay for meal/rest breaks, reporting time pay and sick pay, were not included in gross wages earned by Plaintiff and members of the Class." (Pl.'s Comp. ¶100.) Plaintiff further alleges "Defendant failed to furnish Plaintiff and the Class, upon payment of wages, itemized statements accurately showing the number of hours worked and the rates paid." (Id.) And Plaintiff's allegations of systematic policies that uniformly impacted every class member justifies an assumption of a 100% violation rate. (Compl. ¶¶21(b), 27, 99.)

71.     Labor Code section 226(e) claims statutory penalties have a one-year statute of limitations. See Code Civ. Proc. § 340(a). Thus, the applicable statute of limitations for this claim is from September 30, 2023 to present.

72.     A review of Defendant's business records confirms that Defendant paid wages to Plaintiff on a biweekly basis. (Minute Decl. ¶24.) Based on records available to Defendant, Plaintiff worked 14 biweekly payroll periods, and he alleges he received a compliant wage statement for none. (Id; see Pl.'s Comp. ¶¶49, 94-105.)

73.     Thus, Plaintiff's allegations place an amount in controversy of $450.00. (1 * $50) + (13 * $100) = $1,350. (Minute Decl. ¶33.)

### 7.    Plaintiff's Waiting Time Penalties Claim Places at Least $3,000.71 to the Amount in Controversy.

74.     Plaintiff's Sixth Cause of Action seeks waiting time penalties in an amount equal to up to 30 days' wages for Plaintiff for [Defendant's] alleged willful failure to pay all wages owed to employees at the time of discharge. (Pl.'s Compl. ¶¶106-111.)

75.     Plaintiff alleges that "[a]s a further result of Defendant's failure to pay employees at required overtime wage rates due to off the clock work, minimum wages, for meal/rest breaks not properly afforded, reporting time pay, sick pay, when the employees left their employ, they were not timely paid all wages due them, as required by Labor Code §§ 201, 202 and Wage Order 7." (Id. at ¶50.) Plaintiff further alleges that "it was the practice of Defendant to not pay employees the final paychecks within the time periods mandated by Labor Code §§201, 202 and Wage Order 7." (Id.) Plaintiff also alleges that this systematic policy was willful. (Id. at ¶109.)

76.     The "recovery of waiting time penalties does not hinge on the number of violations committed; rather Defendants 'need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply.'" *Demaria v. Big Lot Stores PNS*, No. 2:23-cv-00296-DJC-CKD, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023) (quoting *Noriesta v. Konica Minolta Bus. Solutions U.S.A.*, No. ED CV 19-0839-DOC-SPx, 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019)). Where, like here, final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members" when estimating that amount

1  in controversy under CAFA. *Marentes v. Key Energy Servs. Cal., Inc*., 2015 WL 756516, at *9

2  (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc*., 2017 WL 4544747, at *3

3  (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges "putative class members were owed (and are

4  still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the

5  thirty-day limit"). The Ninth Circuit has confirmed the reasonableness of assuming 30 days of

6  daily wages for calculating the amount in controversy. *Jauregui v. Roadrunner Transp. Servs., Inc*.,

7  28 F.4th 989, 993 (9th Cir. 2022).

8          77.    Labor Code section 203 penalties "accrue not only on the days that the employee

9  might have worked, but also on nonwork days," for up to 30 days, and the accrual of these

10 penalties "has nothing to do with the number of days an employee works during the month."

11 *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). Because the "targeted wrong" addressed

12 by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is

13 not made." Therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the

14 employee's daily wages for each day he or she remained un-paid up to a total of 30 days." *Id*. at

15 493.

16         78.    Plaintiff's allegations that the harm applied uniformly to all putative class members

17 as a result of Defendant's uniform policies and practices justify a 100% violation rate. (Id. ¶¶21(b),

18 27, 99.)

19         79.    Here, Plaintiff alleges he is entitled up to 30 days wages in waiting time penalties.

20 (Pl.'s Comp. ¶ 111.) As such, based on Plaintiff's allegations, it is reasonable to assume Plaintiff

21 seeks to recover waiting time penalties in an amount equal to 30 days' wages.

22         80.    To calculate the value of Plaintiff's waiting time penalty claim for purposes of the

23 amount in controversy, Defendant multiplied 30 full working days of the average hours worked per

24 day (6.42) by the average hourly wage earned by the Plaintiff during the Relevant Period: (($15.58

25 * 6.42) * 30 = $3,000.71). (Minute Decl. ¶31.) Thus, the amount in controversy for the waiting

26 time penalty claim is at least $3,000.71.

1

2

**8.      Plaintiff's Labor Code section 204 Claim Places at Least $3,507.34 to the Amount in Controversy.**

3

4

5

81.      Labor Code Section 210 allows for recovery of statutory damages for a violation of Section 204's timing-of-pay requirements in the amount of $100 per pay period and $200 for any willful violation, plus 25% of the amount withheld.

6

7

8

82.      Labor Code section 204 claims statutory penalties have a one-year statute of limitations. See Code Civ. Proc. § 340(a). Thus, the applicable statute of limitations for this claim is from September 30, 2023, to present.

9

10

11

12

13

14

15

83.      Because Plaintiff's section 204 claim is derivative of his claims for failing to timely pay all overtime and minimum wages, meal period premiums, and rest period premiums he contends were due (Pl.'s Comp. ¶¶64, 73, 87, 93, and 134), it is reasonable to assume a 100% violation rate for his section 204 claim. *See Wicker*, 2021 WL 1187271, at *4 ("[B]ecause it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.").

16

17

18

19

84.      Because Plaintiff alleges "willful" failures to pay the underlying wages when due (Pl.'s Comp. ¶¶133, 134, and 136), the heightened $200 penalty under Labor Code section 210(a)(2) applies. Thus, Plaintiff has placed more than $2,800 in controversy in connection with his section 204 claim. (14 * $200). (Minute Decl. ¶32.)

20

21

85.      In sum, Plaintiff's Labor Code section 204 claim conservatively adds an additional $3,507.33 to the amount in controversy. ($2,800 + $260.97 + $446.37 = $3,507.34.) (Id.)

22

23

**9.      Plaintiff's Attorneys Fee Claim Places at Least $75,000 to the Amount in Controversy.**

24

25

26

27

28

86.      Plaintiff also seeks to recover an unspecified amount of attorneys' fees. (Pl.'s Comp. ¶¶4, 58, 65, 70, 73, 87, 98, 104, 116, 128, 137, 139, pp. 34-35.) The Ninth Circuit held that where an award of attorneys' fees is authorized by statute, a court "must" recognize these fees in the amount in controversy. *See, e.g., Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if

18

he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 416 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)) ("The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'").

87.    The amount of attorneys' fees placed in controversy is the total amount of fees that will likely accrue during the course of litigation. *Lippold v. Godiva Chocolatier, Inc*., No. C 10–00421, 2010 WL 1526441, at *3–4 (N.D. Cal. Apr. 15, 2010) ("a reasonable estimate of attorneys' fees likely to be expended" should be included in calculating the amount in controversy); *Swans v. Fieldworks, LLC*, No. 222CV07250SPGMRW, 2023 WL 196918, at *2–3 (C.D. Cal. Jan. 17, 2023) ("Defendant has proved beyond a preponderance of evidence that the amount in controversy exceeds $75,000 based on approximately $20,000 in damages and $60,000 in attorneys' fees.").

88.    Multiple courts have confirmed that attorneys' fees in wage and hour cases asserting individual claims often exceed $100,000. *See, e.g., Martin v. The Old Turner Inn*, 2003 WL 22998402 (Cal. Sup. 2003) (awarding $147,610 in attorneys' fees and costs in a single plaintiff wage and hour case in which the plaintiff recovered $49,508 in damages); *Cappuccio v. Pepperdine University*, Case. No. 13- cv-3125-DSF-AJWx, 2014 WL 12573366, at *5-6 (C.D. Cal. Sept. 29, 2014) (awarding $102,153.75 in attorneys' fees and costs in a single plaintiff case for violations of the Fair Labor Standards Act in which plaintiff recovered $120,000 in economic damages).

89.    Also, multiple courts have recognized that "an attorney handling an individual wage-and- hour case 'typically spends ***far more than 100*** hours on the case'." *Swans*, 2023 WL 196918, at *3 (quoting *Hernandez*, 2020 WL 5496172, at *5) (emphasis added); *see also Lippold*, 2010 WL 1526441, at *4 (asserting that a "typical individual wage and hour case" can generate fees in excess of $100,000 when using a $400 per hour rate for attorneys' fees to meet the amount in controversy); *Hernandez v. Aramark Food & Support Servs. Grp., Inc*., No. 20-CV-03633-EJD, 2020 WL 5496172, at *5 (N.D. Cal. Sept. 11, 2020) (same); *Sasso v. Noble Utah Long Beach,*

19

1  *LLC*, No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) ("Recent

2  estimates for the number of hours expended through trial for employment cases in this district have

3  ranged from 100 to 300 hours.").

4      90.    Here, Plaintiff's counsel Kevin A. Lipeles submitted a declaration in connection

5  with a motion for an attorney's fee award in a recent wage and hour matter, *Marroquin v. Food*

6  *Castle, Inc. (Los Angeles Superior Court Case No. 21STCV22582)*. (Turpen Decl. ¶6 Ex. D

7  [Lipeles Decl.] p 8 ¶19.) Mr. Lipeles' declaration states his billable rate as of the date of the

8  declaration was $750 per hour.

9      91.    Here, 100 hours at a billable rate of $750 per hour is a conservative estimate.

10  Defendant expects Plaintiff's counsel will spend far in excess of 100 hours on this matter given

11  anticipated pre-discovery litigation, including conferences on various responsive motions,

12  stipulations on briefing schedules regarding the same, and briefing various responsive motions.

13  (Turpen Decl. ¶7.)

14      92.    Thus, conservatively assuming 100 hours of work on this matter, and conservatively

15  estimating an average billable rate for Plaintiff's counsel of $750/hour, Plaintiff's request for

16  attorney's fees conservatively places $75,000 in controversy for attorney fees alone.

17          **10.    Summary of Amount in Controversy.**

18      93.    As set forth above, and while Defendant denies that Plaintiff is entitled to recover

19  any such amounts, the allegations in the Complaint satisfy the requisite $75,000 amount in

20  controversy for purposes of removal under 28 U.S.C. Sections 1332, 1441(a) and 1446:

21
| **Alleged Damages** | **Amount in Controversy** |
|---|---|
| Unpaid Minimum Wage Claim | $4,424.72 |
| Unpaid Overtime Claim | $654.36 |
| Meal Period Claim | $2,430.48 |
| Rest Period Claim | $2,748.31 |
| Unreimbursed Business Expense Claim | $850.00 |
| Wage Statement Penalty Claim | $1,350.00 |
| Waiting Time Penalty Claims | $3,000.71 |
| Labor Code Section 204 Claims | $3,507.34 |
| **SUBTOTAL** | $18,965.92 |
| **Attorneys' Fees** | $75,000 |
| **TOTAL** | $93,965.92 |

DEFENDANTS C & K MARKET, INC., DBA SHOP SMART AND RAY'S FOOD PLACE'S NOTICE OF
REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1    **IV.    PLAINTIFF'S COMPLAINT IS REMOVABLE PURSUANT TO THE CAFA**

2        94.    As set forth below, Plaintiff's claims, as alleged in the Complaint, are removable

3    under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4        95.    Under CAFA, the Federal District Court has jurisdiction if: (a) there are at least 100

5    class members in all proposed plaintiff classes; (b) the combined claims of all class members

6    exceed $5 million exclusive of interest and costs; and (c) any class member (named or not) is a

7    citizen of a different state than any Defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and

8    1453(a).

9        **A.    There Are At Least 100 Class Members in the Proposed Class.**

10       96.    Plaintiff purports to bring this action on behalf of all persons who worked for

11   Defendant in California as an hourly paid employee within the past four years. (Pl.'s Comp. ¶17.)

12       97.    Plaintiff alleges "[t]he persons who comprise the Class are so numerous that the

13   joinder of all those persons is impracticable and the disposition of their claims as a Class will

14   benefit the parties and the Court." (Pl.'s Compl. ¶21(a), 22, and 23(c).)

15       98.    Based on a review of Defendant's business records, Defendant employed

16   approximately 1,094 non-exempt hourly employees who worked at least one shift in the State of

17   California (collectively, "putative class members") at some time during the period from September

18   30, 2020, to February 14, 2025. (the "Data Period"). (Minute Decl. ¶18.) The Data Period is shorter

19   than the Relevant Period and is therefore sufficient to calculate the amount in controversy.

20       99.    Because Defendant collectively employed at least 1,094 putative class members in

21   the Data Period, which is shorter than the Relevant Period, and since 1,094 is greater than 100,

22   Defendant has established the first requirement for CAFA jurisdiction.

23       **B.    The Requisite $5 Million Amount in Controversy Is Satisfied.**

24           **1.    The Standard for Establishing the Amount in Controversy**

25       100.   CAFA authorizes the removal of class-action cases in which the amount in

26   controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

27       101.   To establish the amount in controversy, "the notice of removal must include only 'a

28   plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'"

DEFENDANTS C & K MARKET, INC., DBA SHOP SMART AND RAY'S FOOD PLACE'S NOTICE OF
REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1    *Schneider v. Ford Motor Co*., 756 F. App'x 699, 700 (9th Cir. 2018) (quoting *Dart Cherokee*

2    *Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

3          102.    So long as Defendant establishes that the amount-in-controversy could exceed the

4    jurisdictional threshold under CAFA, the case is removable. *Rea v. Michaels Stores, Inc*., 742 F.3d

5    1234, 1239 (9th Cir. 2014) (defendant need only establish "that the potential damages could

6    exceed" $5 million). As established below, Defendant's notice of removal leaves no question that

7    the amount in controversy could exceed $5 million and therefore, the case is removable under

8    CAFA.

9                              **2.    Relevant Class Member Data**

10          103.    Defendant's business records covering the Data Period (which is shorter than the

11    Relevant Period) confirms that Defendant employed at least 1,094 putative class members during

12    the Relevant Period. (Minute Decl. ¶18.)

13          104.    Defendant's business records covering the Data Period (which is shorter than the

14    Relevant Period) confirms the putative class members worked 16,699 months during the Relevant

15    Period. (Minute Decl. ¶23.)

16          105.    During the Data Period, putative class members collectively worked approximately

17    281,267 shifts in California. (Id. at ¶19.)

18          106.    During the Data Period, putative class members collectively worked approximately

19    66,320 workweeks in California. (Id. at ¶22.)

20          107.    During the Data Period, the putative class members earned an average hourly wage

21    equal to approximately $17.30 per hour. (Id. at ¶24.)

22          108.    Within the one-year statute of limitations period applicable to Plaintiff's wage

23    statement penalty claim (based on the September 30, 2024 filing date), Defendant employed

24    approximately 508 putative class members who collectively worked approximately 11,002

25    biweekly pay periods which would trigger the provision of a wage statement. (Id. at ¶ 25.)

26          109.    Within the three-year statute of limitations period applicable to Plaintiff's claim for

27    waiting time penalties, Defendant employed approximately 546 putative class members who

28    voluntarily or involuntarily separated employment from Defendant. (Id. at ¶26.)

110.     In summary, Defendants' review of Defendants' business records confirms the following relevant statistics:

| Data period | 9/30/2020 – 2/14/2025 |
|---|---|
| Putative class members | 1,094 |
| Total shifts worked by putative class members | 281,267 |
| Total workweeks by putative class members | 66,320 |
| Average hourly wage by putative class members | $17.30 |
| Employees during 226 period (1 year SOL) | 508 |
| Former employees during 203 period (3 years SOL) | 546 |

(Minute Decl. ¶¶18-26.)

### 3.     Calculating the Amount in Controversy for Removal

#### (a)     Conservative Unpaid Minimum Wage Claim Adds At Least $3,863,990 to the Amount in Controversy.

111.     This claim is based on the same allegations as Plaintiff's individual claim. (Pl.'s Compl. ¶¶ 42-46 and 66-73.) Although this is a minimum wage claim, it is alleged as an off-the-clock claim seeking regular wages. Thus, Defendant uses the average hourly rate across the putative class members instead of the applicable minimum wage rate.

112.     Based upon the conservative estimate that each putative class member is entitled to two hours of unpaid wages per workweek, and conservatively applying an average hourly rate of $17.30 in effect during the Relevant Period, the amount of unpaid wages in controversy during the Relevant Period is at least $1,931,995. ((55,838 * $17.30) * 2 = $1,931,995). (Minute Decl. ¶36.)

113.     Like Plaintiff's individual claim, the class claim also seeks to recover "liquidated damages" in amounts equal to the amounts of unpaid minimum wages. (Cal. Lab. Code § 1194.2 Pl.'s Comp. ¶71.) Therefore, the amount of unpaid minimum wages is multiplied by two to get liquidated damages ($1,931,995 * 2 = $3,863,990). (Minute Decl. ¶36.)

114.     In sum, Defendant estimates Plaintiff is claiming at least $3,863,990 in unpaid (off-the-clock) wages at his straight time rate and liquidated damages for purposes of calculating the amount in controversy. (Id.)

#### (b)     Conservative Unpaid Overtime Estimate Add at Least $1,321,582 to the amount in Controversy.

115.     This claim is based on the same allegations as Plaintiff's individual claim. (Pl.'s

23

1  Compl. ¶¶39-41 and 56-65.)

2  116.    Based upon the conservative estimate that each putative class member is entitled to

3  2 hours of unpaid overtime per workweek, and conservatively applying the average base hourly

4  rate of $17.30 in effect during the Relevant Period to calculate the overtime rate, the amount of

5  overtime wages in controversy during the Relevant Period is at least $1,321,582. ((25,464 * 2) *

6  ($17.30 * 1.5) = $1,321,582.) (Minute Decl. ¶37.)

7  117.    Based on a conservative estimate of one unpaid hour of overtime worked per week,

8  the amount placed in controversy by Plaintiff's allegations is $1,321,582. (Minute Decl. ¶37.)

9  **(c)    Conservative Meal Period Estimates Add at Least $2,424,820 to**
10  **the Amount in Controversy.**

11  118.    This claim is based on the same allegations as Plaintiff's individual claim. (Pl.'s

12  Compl. ¶¶47, 74-87.) Plaintiff's allegations support the assumption that at least three meal period

13  break violations occurred every workweek during the class period.

14  119.    Assuming a 3 meal period violations per workweek resulting in 3 unpaid meal break

15  premiums per workweek at the average wage rate across the putative class members, this claim

16  places at least $2,424,820 in controversy. ((233,605 * 60%) * $17.30 = $2,424,820). (Minute Decl.

17  ¶38.)

18  **(d)    Conservative Rest Period Estimates Add at Least $2,825,654 to**
19  **the Amount in Controversy.**

20  120.    This claim is based on the same allegations as Plaintiff's individual claim. (Pl.'s

21  Compl. ¶¶48, 88-93.) Plaintiff's allegations support the assumption that at least three rest period

22  break violations occurred every workweek during the class period.

23  121.    Assuming 3 rest period violations per workweek resulting in 3 unpaid rest break

24  premiums per workweek at the average wage rate across the putative class members this claim places

25  at least $2,825,654 in controversy. ((272,221 * 60%) * $17.30 = $2,825,654). (Minute Decl. ¶39.)

26  **(e)    Conservative Expense Reimbursement Estimates Add at Least**
27  **$834,950 to the Amount in Controversy.**

28  122.    This claim is based on the same allegations as Plaintiff's individual claim. (Pl.'s

24

1   Compl. ¶¶51, 112-116.)

2       123.    During the Relevant Period, the putative class members worked 16,699 months.

3   (Minute Decl. ¶43.)

4       124.    To calculate the amount in controversy for Plaintiff's expense reimbursement claim,

5   Defendant multiplied the amount used for the Plaintiff ($50 per month) by the total months in the

6   class period ((16,699 * $50) = $834,950) to calculate $834,950 as the amount in controversy for

7   this claim. (Minute Decl. ¶43.)

8                   **(f)    Conservative Wage Statement Penalties Estimates Add at Least**
                    **$1,074,800 to the Amount in Controversy.**
9

10      125.    This claim is based on the same allegations as Plaintiff's individual claim. (Pl.'s

11  Compl. ¶¶49, 94-105.) A review of Defendant's business records confirms that Defendant paid

12  wages to Plaintiff and the putative class members on a biweekly basis. Based on records available

13  to Defendant, Plaintiff and the putative class members worked 11,002 biweekly payroll periods,

14  and he alleges he received a compliant wage statement for none. (Id.)

15      126.    Defendants' records indicate that 508 putative class members received at least one

16  wage statement during the period between September 30, 2023 and February 14, 2025. (Minute

17  Decl. ¶42). In total, Defendant issued 11,002 wage statements to putative class members during

18  this time. (Id.)

19      127.    Applying a $50 wage statement penalty to the first pay period at issue for all 508

20  putative class members who received a wage statement during the applicable time places $25,400

21  in controversy ($50 * 508 putative class members).

22      128.    Applying a $100 wage statement penalty to the remaining 10,494 pay periods at

23  issue for all 508 putative class members who received a wage statement during the applicable time

24  period with a $4,000 cap per employee places $1,049,400 in controversy ($100 * 10,494 pay

25  periods).

26      129.    Thus, Plaintiff's allegations place an amount in controversy of $1,074,800. (508 *

27  $50 = $25,400) + (10,494 * $100 = $1,049,400) = $1,074,800). (Minute Decl. ¶42.)

28

DEFENDANTS C & K MARKET, INC., DBA SHOP SMART AND RAY'S FOOD PLACE'S NOTICE OF
REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1
2

        **(g)     Conservative Waiting Time Penalties Estimates Add at Least $1,983,618 to the Amount in Controversy.**

3

130.    This claim is based on the same allegations as Plaintiff's individual claim. (Pl.'s

4

Compl. ¶¶50, 106-111.) Plaintiff's claim is entirely derivative of all other wage claims, including

5

Defendant's alleged failure to pay minimum and overtime wages and meal and rest break premium

6

wages, for which Plaintiff alleges violations occurred "regularly," (Supra, at ¶¶40, 46, 61, and 82.)

7

Based on Plaintiff's allegations, it is reasonable to assume that 100% of the former, non-exempt

8

employees (in the three-year § 203 limitations period) are entitled to the maximum thirty (30) days'

9

wages.

10

131.    Thus, to calculate the amount in controversy for this claim, Defendant calculated the

11

number of employees represented in the dataset who separated from employment during the three

12

(3) year period prior to the filing of the Complaint. (Minute Decl. ¶40.) Defendant assumed an

13

average of seven (7) hours worked per day paid at the average hourly rate for the putative class

14

members and then calculated thirty (30) days wages at the average hourly rate. (Id.) Doing so

15

places at least $1,983,618 in controversy. (7hr * 17.30/hr * 30 days * 546 terminated employees =

16

$1,983,618).

17
18

        **(h)     Plaintiff's Labor Code Section 204 Claim Places at Least $2,839,987 in Controversy.**

19

132.    This claim is based on the same allegations as Plaintiff's individual claim. (Pl.'s

20

Comp. ¶134). Because Plaintiff alleges "willful" failures to pay the underlying wages when due the

21

heightened $200 penalty under Labor Code section 210(a)(2) applies. (Id.) Thus, Plaintiff has

22

placed more than $2,200,400 in controversy in connection with his section 204 claim. (11,002 bi-

23

weekly payroll periods * $200 penalty= $2,200,400).

24

133.    Plaintiff's allegations support the assumption that he can also recover an additional

25

"25 percent of the amount unlawfully withheld." Cal. Lab. Code § 210(a).

26

134.    During the one-year statutory period, Defendant calculates Plaintiff's unpaid

27

minimum wage claim to be $604,843; 25% of that is $151,211. Defendant calculates the withheld

28

overtime claim to be $312,594, twenty-five percent of that is $78,148. Thus, the combined amounts

1  of allegedly withheld regular and overtime wages is $229,359. (Minute Decl. ¶41.)

2     135.    Next, Defendant calculates Plaintiff's meal period claim to be $756,609; twenty-five

3  percent of that is $189,152. Defendant calculates Plaintiff's rest period claim to be $884,303; 25%

4  of that is $221,076. Thus, the combined amounts of the meal and rest period claims is $410,228.

5  (Id.)

6     136.    In sum, Plaintiff's Labor Code section 204 claim conservatively adds an additional

7  $2,839,987 to the amount in controversy. (Id.)

8                    **(i)    Plaintiff's attorney fees could also be added to the amount in**
                             **controversy.**
9

10    137.    Plaintiff also seeks attorneys' fees on behalf of the putative class. (Pl.'s Comp. ¶¶ 4,

11  58, 65, 70, 73, 87, 98, 104, 116, 128, 137, 139, pp. 34-35.) Attorneys' fees are properly included in

12  the amount in controversy. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir.

13  2007) (statutorily mandated attorneys' fees are properly included in the amount in controversy for

14  CAFA jurisdiction purposes).

15    138.    In wage and hour class actions, courts commonly use a 25% benchmark for

16  attorneys' fees when analyzing the amount in controversy. *See, Ortega v. Loyal Source*

17  *Government Services LLC*, No. 3:20-cv-0879-LAB-NLS, 2022 WL 378426, at * 4 (S.D. Cal. Feb.

18  7, 2022) (upholding 25% attorneys' fees request in wage and hour class action as "equal to the

19  Ninth Circuit's benchmark rate" for class actions and "reasonable.")

20    139.    Plaintiff's counsel in this case often seeks an award of attorneys' fees for

21  settlements of wage and hour class actions equal to at least 25% of the common fund. *Felix v. WM.*

22  *Bolthouse Farms, Inc.*, No. 1:19-cv-00312-AWI-JLT, 2020 U.S. Dist. LEXIS 2354, at *22-23

23  (E.D. Cal. Jan. 7, 2020) ["[c]lass counsel requests attorneys' fees that total $39,425.00, which

24  represents 33% of the $118,275.00 common fund"); *Soto v. O Reilly Auto Enters., LLC*, No. EDCV

25  20-214 JGB (KKx), 2023 U.S. Dist. LEXIS 39113, at *21 (C.D. Cal. Mar. 6, 2023) ("Class

26  Counsel seeks an attorneys' fees award of $237,500 which represents 25% of the $950,000

27  common fund."); (Turpen Decl. ¶6 Ex. D [Seeking "35% of the Gross Settlement Amount"].)

28    140.    Therefore, it is reasonable to multiply by 25% the amount placed in controversy by

27

all other claims to determine the amount in controversy by Plaintiff's request for attorneys' fees.

141.    Here, the amount in controversy is easily established even if attorneys' fees are not considered. Defendant conservatively estimated amounts in controversy for Plaintiff's claims to be $17,169,400. (Minute Decl. ¶44.) Adding 25% for attorney fees would add an additional $4,292,350 to the amount in controversy, for a total of $21,461,750.

### 4.    Summary of Amount in Controversy

142.    As set forth above, the allegations in the Complaint satisfy the requisite $5 million amount in controversy for purposes of removal under CAFA:

| Alleged Damages | Amount in Controversy |
|---|---|
| Unpaid Minimum Wage Claim | $3,863,990 |
| Unpaid Overtime Claim | $1,321,582 |
| Meal Period Claim | $2,424,820 |
| Rest Period Claim | $2,825,654 |
| Unreimbursed Business Expense Claim | $834,950 |
| Waiting Timer Penalty Claim | $1,983,618 |
| Wage Statement Penalty Claim | $1,074,800 |
| Labor Code Section 204 Claim | $2,839,987 |
| SUBTOTAL | $17,169,400 |
| | |
| Attorney's Fees (25%) | $4,292,350 |
| | |
| TOTAL | $21,461,750 |

### C.    Any Class Member Is a Citizen of a Different State Than Any Defendant.

143.    For purposes of establishing diversity under CAFA, this Court need only find that there is diversity between one putative class member and one named Defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

144.    As explained above, there is complete diversity between Plaintiff, a citizen of the State of California, and Defendant a citizen of the State of Oregon.

145.    Additionally, members of the proposed class are, or were, by definition, "employed by [Defendant] . . . in California" and are presumed to be primarily citizens of the State of California. *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" is an important factor weighing in favor of citizenship.). Thus, even if Plaintiff is not considered to be a citizen of California, and was instead deemed to be a citizen of another state (and to be clear, there

DEFENDANTS C & K MARKET, INC., DBA SHOP SMART AND RAY'S FOOD PLACE'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1   is no evidence that is the case), the hundreds of other putative class members he seeks to represent,

2   all of whom, by virtue of the allegations in the Complaint, necessarily worked in California (Pl.'s

3   Comp. ¶17), are citizens of California.

4   **V.      VENUE**

5         146.    Venue lies in this Court because Plaintiff's action is pending in this district and

6   division. See 28 U.S.C. § 1441(a). Under United States Code, Title 28, Section 1441(a), this case

7   may properly be removed to the Northern District of California because Plaintiff filed this case in

8   the Superior Court of California, County of Humboldt. Additionally, Defendant is informed and

9   believes that the events allegedly giving rise to this action occurred within this judicial district.

10  **VI.     SATISFACTION OF REQUIREMENTS OF 28 U.S.C. 1446**

11        147.    In accordance with United States Code, Title 28, Section 1446(a), Exhibit B to the

12  Declaration of Spencer S. Turpen constitutes a copy of all processes, pleadings, and orders either

13  served upon or by Defendant. As required by United States Code, Title 28, Section 1446(b), the

14  Notice of Removal was filed within 30 days after Defendant was served with Plaintiff's Complaint.

15  As required by United States Code, Title 28, Section 1446(d), Defendant will provide notice of this

16  removal to Plaintiff through his attorneys of record and a copy of this Notice of Removal will be

17  filed with the Superior Court of the State of California for the County of Humboldt.

18  **VII.    CONCLUSION**

19        148.    Because this civil action is between citizens of different States and the matter in

20  controversy exceeds $75,000, exclusive of interest and costs, Defendant respectfully requests that

21  this Court exercise its removal jurisdiction over this action.

22        149.    Alternatively, this Court has original jurisdiction over Plaintiff's claims by virtue of

23  the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). This action is thus properly removable to

24  federal court pursuant to 28 U.S.C. § 1441.

25        150.    In the event this Court has a question regarding the propriety of this Notice,

26  Defendant requests the Court set an evidentiary hearing so that it may have an opportunity to more

27  fully brief the Court on the basis for this removal.

28  / / /

1       WHEREFORE, Defendant removes this action to this Court.

2

3 DATED: February 21, 2025

                              OGLETREE, DEAKINS, NASH, SMOAK &
4                               STEWART, P.C.

5                               By: */s/Spencer S. Turpen*
6                                      Michael J. Nader
                                     Spencer S. Turpen
7
                              Attorneys for Defendant C & K MARKET, INC.,
8                               DBA SHOP SMART AND RAY'S FOOD
                              PLACE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28