1  Kevin A. Lipeles (Bar No. 244275)
   kevin@kallaw.com
2  Thomas H. Schelly (Bar No. 217285)
   thomas@kallaw.com
3  LIPELES LAW GROUP, APC
   880 Apollo Street, Suite 336
4  El Segundo, California 90245
   Telephone: (310) 322-2211
5  Fax: (310) 322-2252

6  Attorneys for Plaintiff,
   ERIC ALLEN PHILLIPS

7
                    **UNITED STATES DISTRICT COURT**
8
                  **NORTHERN DISTRICT OF CALIFORNIA**
9

10  ERIC ALLEN PHILLIPS, an individual, on      Case No. 3:25-CV-01868-EMC
    his own behalf and on behalf of all others
11  similarly situated,                          **NOTICE OF MOTION AND**
                                                 **MEMORANDUM OF POINTS AND**
12                      Plaintiffs,              **AUTHORITIES IN SUPPORT OF**
                                                 **PLAINTIFF'S MOTION FOR**
13  vs.                                          **PRELIMINARY APPROVAL OF CLASS**
                                                 **ACTION SETTLEMENT**
14
15  C & K MARKET, INC., DBA SHOP                 Judge:   Hon. Edward Chen
    SMART and RAY'S FOOD PLACE, an               **Court Date Subject to Change**
16  Oregon corporation; and DOES 1 through       Date:     October 30, 2025
    100, inclusive,                              Time:     1:30 PM
17                                               Ctrm:     5
                        Defendants.
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................... 1

II.   FACTUAL SUMMARY ......................................................... 2

    A.    Plaintiffs' Claims ........................................................ 2

    B.    Defendant Denies Plaintiffs' Claims ............................ 2

    C.    Procedural History ...................................................... 3

    D.    Marshaling of Evidence and Damages Model ............... 4

    E.    Settlement Negotiations ............................................... 5

    F.    Summary of Settlement Terms .................................... 11

    G.    The Court Has Determined That Rule 23 Class Certification Requirements Are Met .................................................. 13

III.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ..................................................................... 16

    A.    Agreement is Within the Range of Possible Approval ......................... 17

    B.    The Proposed Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations .................................................. 18

    C.    The Agreement Contains No Obvious Deficiencies ........................... 19

        1.    The Agreement Does Not Grant Preferential Treatment to Segments of the Class ................................................ 19

        2.    The Agreement Does Not Grant Unduly Preferential Treatment to the Class Representatives ........................... 19

        3.    The Attorneys' Fees Under the Agreement Are Reasonable ..... 20

IV.   APPROVAL OF NOTICE OF SETTLEMENT AND RELATED FORMS ......................................................................... 21

    A.    Administration of Notice, Objections and Claims ................................. 21

    B.    The Court Shall Direct Distribution of the Notice of Settlement ......... 22

    C.    The Proposed Notice of Settlement and Claims Process Are Appropriate .................................................................. 23

    D.    The Court Should Set A Final Approval Hearing ................................ 24

V.    CONCLUSION ................................................................... 24

i

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Amchem Prods. v. Windsor,*
    521 U.S. 591, 623 (1997) ................................................................................................ 15

*Bennett v. SimplexGrinnell LP*, No. 11-cv-1854, 2015 U.S. Dist. LEXIS 192870, at *18-19
    (N.D. Cal. Sept. 3, 2015) ............................................................................................... 21

*Boring v. Bed Bath & Beyond of Cal. Limited Liability Co.*, No. 12-cv-05259-JST, 2013 WL
    6145706, *7 (N.D. Cal. Nov. 21, 2013) ........................................................................ 18

*Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. Lexis 86920 at *17 (C.D. Cal. 2010) ...................... 21

*Class Plaintiffs v. City of Seattle*, 955 F.2d (9th Cir. 1992) ................................................... 16

*Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2013 WL 6114379, at *6 (N.D. Cal.
    Nov. 20, 2013) ............................................................................................................... 18

*Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173 (1974) ............................................... 22, 23

*General Tel. Co. v. Falcon,*
    457 U.S. 147, 157-8, n. 13 (1982) ................................................................................ 15

*Gomez v. H & R Gunland Ranches, Inc.,* No. CV F 10-1163 LJO MJS, 2011 U.S. Dist.
    LEXIS 135424, *6 (E.D. Cal. Nov. 23, 2011) ............................................................. 21

*Hanlon v. Chrysler Corporation,*
    150 F.3d, 1029-1120 (9th Cir. 1998) ............................................................. 13, 14, 15, 16

*Ikonen v. Hartz Mountain Corp.,*
    122 F.R.D. 258, 262 (S.D.Cal. 1988) ........................................................................... 13

*In re Conseco Life Ins. Co. Cost of Ins. Litigation*, 2007 WL 3170134, *2 (CD. Cal. 2007) ........ 20

*In re Lorazepam & Clorazepate Antitrust Lit.,*
    202 F.R.D. 12, 29 (D.D.C. 2001) ................................................................................. 16

*In re Tableware Antitrust Litig.,*
    484 F.Supp.2d 1078, 1079 (N.D.Cal. 2007) ................................................................. 17

*Linney v. Cellular Alaska Partnership,* 1997 WL 450064, *7 (N.D. Cal. 1997) ..................... 20

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ............... 17

*Ortega v. J.B. Hunt Transport, Inc.,*
    258 F.R.D. 361, 367 (2009) ..................................................................................... 15, 16

*Paul, Johnson, et al. v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) ........................................................................................ 21

ii

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Qiuzi Hu v. Plehn-Dujowich*, No. 18-cv-01791-AGT, 2020 U.S. Dist. LEXIS 260177, at *6-8
(N.D. Cal. Mar. 2, 2020) ........................................................................................................21

Rabin v. PricewaterhouseCoopers LLP, No. 16-cv-02276-JST, 2021 U.S. Dist. LEXIS
41285, at *22-27 (N.D. Cal. Feb. 3, 2021) ...........................................................................21

*Staton v. Boeing Co.,*
327 F.3d 938, 976-77 (9th Cir. 1993) ...................................................................................20

*Stevens v. Safeway, Inc*., 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008) .................................20

*U.S. v. Truckee-Carson Irrigation Dist.,*
71 F.R.D. 10, 18 (D.Nev. 1975)...........................................................................................23

*VanVranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995)...........................20

*Vasquez v. Coast Valley Roofing, Inc.,*
670 F.Supp.2d 1114 (E.D.Cal. 2009) ...................................................................................17

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043, 1048-50 (9th Cir. 2003) ...............................................................................21


**STATUTES**

Cal. Bus. & Prof. Code §17200 ......................................................................................................2

California Labor Code Private Attorneys General Act of 2004 ...............................................2, 4

Fed. R. Civ. P. 23 ...............................................................................................................1, 13, 23

Fed. R. Civ. P. 23 (a)(4) ..............................................................................................................15

Fed. R. Civ. P. 23 (c)(2)(B) .........................................................................................................23

Fed. R. Civ. P. 23 (e)(1)(A) .........................................................................................................16

Fed. R. Civ. P. 23 (e)(1)(B) .........................................................................................................22

Fed. R. Civ. P. 23(b) ....................................................................................................................13

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................................23


**TREATISES**

*Man. For Complex Lit.,* (3d ed.) §30.41 ......................................................................................17

*Newberg on Class Actions,* (4th ed. 2002) §§ 11:24-25 .............................................................17

**NOTICE IS HEREBY GIVEN** that, on October 30, 2025, at 1:30 p.m. in Courtroom 5 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Edward Chen, pursuant to Fed. R. Civ. P. 23(e), Plaintiff Eric Allen Phillips ("Plaintiff") on behalf of himself and all others similarly situated, will and does hereby move this Court for entry of an Order:

1.      Preliminarily certifying the class for purposes of settlement only;

2.      Preliminarily appointing Plaintiff as Class Representative for purposes of settlement only;

3.      Preliminarily appointing Kevin Lipeles, Esq. of Lipeles Law Group, APC, as Class Counsel for purposes of settlement only;

4.      Preliminarily approving the settlement as fair, adequate, and reasonable, based upon the terms set forth in the parties' Class and Representative Action Agreement and Release ("Agreement"), including payment by Defendants C & K Market, Inc. dba Smart Shop and Ray's Food Place (collectively "Defendants") of the Total Settlement Amount ("TSA") of $750,000;

5.      Preliminarily approving a Class Representative Enhancement Award of $20,000 to Plaintiff Eric Allen Phillips in recognition of his service to the Settlement Class;

6.      Preliminarily approving Plaintiff's Counsel's request for up to 35% of the TSA in the amount of $262,500 as attorneys' fees, plus reimbursement of reasonable litigation costs up to $13,500;

7.      Appointing Phoenix Class Action Administration Solutions ("Phoenix"), as the third-party Claims Administrator for mailing notices and for administration; and

8.      Approving the proposed Notice of Class Action Settlement and ordering it be disseminated to the Class as provided in the Agreement.

This motion is made on the grounds that the proposed settlement is a fair and reasonable compromise of the disputed claims in this action, and it satisfies all criteria for preliminary approval of a class action settlement.  The motion is based upon this Notice of Motion, Motion for Preliminary Approval of Class Action Settlement, the Memorandum of Points and Authorities

1

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

incorporated below, the Agreement, the Declaration of Kevin Lipeles, the Declaration of Eric Allen Phillips, and all supporting exhibits attached thereto.

Dated: August 21, 2025                    Respectfully submitted,

                                          LIPELES LAW GROUP, APC


                                          By:_____

                                          Kevin Lipeles, Esq.
                                          Attorneys for Plaintiff and the Settlement Class

## I.    **INTRODUCTION**

Plaintiff Eric Allen Phillips ("Plaintiff"), on behalf of himself and the Settlement Class,[1] requests that this Court preliminarily approve the parties' proposed Class and Representative Action Agreement and Release ("Agreement"),[2] entered into by Plaintiff and Defendants C & K Market, Inc. dba Smart Shop and Ray's Food Place (collectively "Defendants") in July 2025.

The Agreement seeks to fully release and discharge Defendants from the claims brought against them in the above-captioned matter (the "Action"[3]) and all related penalties, interest and attorneys' fees. In exchange, Defendants will pay up to $750,000 ("Total Settlement Amount") as detailed herein.

The Agreement and Notice distribution plan were the products of non-collusive, arm's-length negotiations by informed counsel and parties following the exchange of documents and data through informal discovery, extensive investigation by both parties, and a full-day mediation with an experienced mediator serving as a class action mediator. The settlement is fair, reasonable and adequate to all. Accordingly, Plaintiff seeks: (1) preliminary approval of the Agreement; (2) provisional certification of the Settlement Class; (3) appointment of Plaintiff as Class Representative for the Settlement Class; (4) appointment of Kevin Lipeles of Lipeles Law Group, APC as Class Counsel for the Settlement Class; (5) approval of the parties' proposed form and method of notifying Class Members of the Agreement; (6) an order scheduling the hearing date for Final Approval of the Class Settlement; and (7) entry of a preliminary approval Order.[4]

---

[1] The Settlement Class is defined as: "all current and former employees who were hourly paid employees of Defendants and worked for Defendants in California at any time during the period from September 30, 2020 to August 10, 2025."

[2] The Agreement and the proposed Notice are attached as Exhibit 1 to the Declaration of Kevin Lipeles ("Lipeles Decl." filed herewith).

[3] All capitalized terms have the same meaning as in the Agreement.

[4] Defendants vigorously deny liability or wrongdoing with respect to the claims asserted in this Action, and as to their wage and hour policies and practices. Defendants reserve their right to assert any and all defenses to the claims asserted by Plaintiff and the putative class. Further, Defendants do not oppose this motion to preliminarily approve of the settlement of a lawsuit that was filed as a class action, but specifically deny that a settlement was necessary as a result of any action or (footnote continues on next page)

## II.   FACTUAL SUMMARY

### A.  Plaintiff's Claims

Plaintiff is a former employee of Defendants who worked as a Deli Clerk from November 7, 2022, until April 1, 2024. Plaintiff alleges that Defendants failed to pay overtime wages due to off the clock work, failed to pay minimum wages, failed to provide meal and rest breaks (or pay the statutory compensation due), failed to issue accurate wage statements, failed to pay all wages on termination, failed to reimburse business expenses, failed to pay reporting time pay, unlawfully deducted wages and failed to pay sick pay. *See* First Amended Class Action Complaint ("FAC"), ¶¶ 1, 3-4; Declaration of Eric Allen Phillips ("Phillips Decl.") ¶¶ 2-3. Plaintiff also asserted claims under Cal. Bus. & Prof. Code §17200 and the California Labor Code Private Attorneys General Act of 2004. *See* FAC, ¶¶ 145-158.

### B.  Defendants Deny Plaintiff's Claims

Defendants vigorously deny Plaintiff's allegations. Among other things, Defendants contend that Plaintiff's reporting time and sick pay claims lacked settlement value since there are no private right of actions for those claims. Additionally, Defendants challenged Plaintiff's class theories on the grounds that they had compliant policies concerning meal/rest breaks and expense reimbursement. Further, Defendants maintained that their meal break punch data reflected substantial compliance with California law. For these reasons, Defendants deny any and all liability for the claims asserted in this Action.

---

inaction by Defendants. Defendants have agreed to resolve the claims asserted by Plaintiff on a class basis to avoid incurring additional substantial costs beyond those which have already been incurred as well as the delay and risks that would be presented by further prosecution of the litigation. The proposed Settlement includes a non-admissions clause, and Defendants have at all times maintained that their wage and hour policies and practices are fully lawful. Hence, Defendants do not join in the substance of the representations made by Plaintiff in this motion and specifically deny the negative characterizations of Defendants' conduct as well as Plaintiff's interpretation of certain legal authorities. Defendants therefore also reserve their right to clarify any aspect of the motion that they believe needs to be addressed.

### C. Procedural History

On September 30, 2024, Plaintiff filed his Original Class Action Complaint in the Alameda County Superior Court for: 1) failure to pay overtime (Cal. Labor Code §§ 510, 558, 1194, 1194.3, 1198); (2) failure to pay minimum wages[5] (Cal. Labor Code §§ 1194, 1197, 1197,1, 1198, 119); (3) failure to pay for meal periods not provided (Cal. Labor Code §§ 226.7, 512); (4) failure to pay for rest periods not provided (Cal. Labor Code §226.7); (5) failure to maintain records and provide accurate itemized wage statements (Cal. Labor Code §§ 226); (6) failure to pay wages on termination (Cal. Labor Code §§ 201-203); (7) failure to reimburse business expenses (Cal. Labor Code § 2802); (8) reporting time pay (Wage Order No. 7)[6]; (9) unlawful deduction of wages (Cal. Labor Code § 221); (10) failure to pay all sick leave wages when due (Cal. Labor Code §§ 201-204, 218, 218.5, 233, 245, 246 et seq.)[7]; (11) failure to allow inspection of employment records (Cal. Labor Code § 1198.5); and (12) unfair/unlawful business practices (Cal. Bus. and Prof. Code §§ 17200 et seq.)

On February 21, 2025, Defendants removed the Action to the United States District Court for the Northern District of California.

Thereafter, the parties engaged in significant informal discovery. Before the mediation, Defendants produced extensive documentation including timekeeping and payroll data, policy documents, class size information, pay period and workweek information and information regarding the hourly rates of the putative settlement class members. Defendants provided discovery sufficient to enable Plaintiff and Class Counsel to rigorously evaluate the strengths and risks of the

---

[5] Minimum wage violation checks had been conducted prior to mediation and no violations were identified. Nonetheless, the overtime off the clock payment calculations account for any potential minimum wage underpayment since the minimum wage claim is based on unrecorded off the clock time.

[6] At the time of mediation, Defendant contended and Plaintiff ascertained that there was no value to this claim since there is no private right of action because Wage Order No. 7 does not provide therefore.

[7] At the time of mediation, Defendant contended and Plaintiff ascertained that there was no value to this claim since there is no private right of action under Labor Code section 204.

Action and to perform an analysis of the potential damages arising from the claims made in the Action.

The parties agreed to engage in a mediation scheduled for June 11, 2025, with Mark Peters, Esq. Lipeles Decl., at ¶ 19.

On June 20, 2025, Plaintiff filed the FAC, adding a claim for violations of the Private Attorney General Act ("PAGA"), Cal. Lab. Code §§2699, *et seq*.

### D. Marshaling of Evidence and Damages Model

Through informal discovery, Plaintiff's counsel has diligently pursued an investigation of the putative Class Members' claims, including reviewing Defendants' informal document production, reviewing other relevant documents including but not limited to, Plaintiff's personnel files, a sampling of 20% of the Class, reviewing the relevant data regarding the size of the putative class; and researching the applicable law and the potential defenses thereto. Lipeles Decl., at ¶11.

Prior to the mediation, Plaintiff was able to construct a damages model from the information informally obtained from Defendants. Based on data provided by Defendants, Plaintiff's analysis estimated that Defendants' maximum exposure on claims that had value, excluding interest and potential PAGA penalties, was $14,614,760.25. *See* Lipeles Decl., ¶ 16. However, in this case, Defendants have, at various times, advanced certain arguments in their defense for which substantial "deductions" were thought to be appropriate by Plaintiff's counsel. For example, Defendants produced evidence showing that:

- Defendants provided a meal break policy that resulted in a compliance rate of 92.35%, an average meal break length of 56.2 minutes, and 4,217 meal break premium wages paid to employees for any discrepancies;

- Defendants contended that the substantial majority of putative class members received compliant rest breaks;

- Defendants never required its employees to work off the clock or use their personal cell phones for work related purposes.

Lipeles Decl., ¶ 17.

### E.  Settlement Negotiations

On July 11, 2025 the parties attended an all-day mediation via Zoom with Mark Peters, Esq. Lipeles Decl., ¶ 19. Attorney Kevin Lipeles of the Lipeles Law Group, Esq., APC attended on behalf of Plaintiff. Attorney Michael Nader of Ogletree Deakins, Nash, Smoak & Stewart, P.C. attended on behalf of Defendants. *Id.* Plaintiff also attended the mediation remotely.

Contested negotiations were conducted at arm's-length.  *Id.* After a full day of negotiations, the parties agreed to settle for $750,000.00 with no claims process and **no reversion** to Defendants of any settlement monies remaining after all Class Members claims are paid.[8]  While Defendants deny any wrongdoing, and believe they have meritorious defenses on the merits, they have concluded that the further defense of this action would be lengthy and expensive for all parties. Plaintiff and Class Counsel have taken into account the uncertainty and risk involved in further litigation, and the difficulties and delays inherent in such litigation.

#### 1.  Data and Damages Model

As part of informal discovery prior to mediation, Defendants culled their documents relating to their wage and hour policies and practices. To estimate the class-wide damages associated with Plaintiff's and the Class's claims, Plaintiff's counsel examined and analyzed the above-described voluminous documents.

From the data received from Defendants, Plaintiff constructed a damages model based on Defendants' exposure. Certain calculations are extrapolated to the Class since the analysis data was based on a 20% sample. As a result, the calculations are multiplied by 5.  Lipeles Decl., ¶ 15.

#### a.  <u>Overtime/Minimum Wage[9] Claims Regarding Off the Clock Work</u>

Plaintiff assumed 12-minutes of off the clock work per shift. Defendants maintained that they did

---

[8] The parties continued to negotiate until their finalized Agreement was fully executed in July 2025. Lipeles Decl., ¶ 24.

[9] Minimum wages was grouped together with overtime since the exposure for minimum wages was small and the value of it was mostly penalties, rather than unpaid wages.

not require off the clock work.

The total number of unpaid off the clock time in the four-year statutory period is 5,054 regular hours and the total number of overtime hours is 6,731. Thus, based on the 20% sample, the total amount of overtime/minimum wages owed equaled $262,103.65 as of June 11, 2025. 5,054 hours * $17.30 + 6,731 * $17.30 * 1.5 = $262,103.65. The total damages extrapolated to the Class, excluding interest and penalties, are $1,310,518.25 ($262,103.65 * 5). Lipeles Decl., ¶ 15A.

### b.  Meal Break Claim

Regarding meal break violations (missed, shortened and/or late), Plaintiff assumed a violation rate of 100%. There were 5,624 pay periods in the four-year statutory period. Thus, there were 5,624 violations (5,624 * 1= 5,624). The total number of meal break violations based on the 20% sample was $97,295.00 (5,624 * $17.30).

Further, Plaintiff assumed that 30% of meal breaks were interrupted. The average wage rate for all employees during the Class Period was $17.30 per hour. The total number of meal break interruptions is 45,713. 45,713 * 30% = 13,713.9. Thus, the total damages for interrupted meal breaks based on the 20% sample was $237,250.00 (13,713.9 * $17.3).

Defendants contended that they have a valid meal break policy and that they authorized and permitted meal breaks. Lipeles Decl., ¶15B.

According to Plaintiff's damages model, Defendants' exposure for meal period violations extrapolated to the Class, amounted to approximately $486,476.00 ($97,295.00 *5). Defendants' exposure for meal period interruptions extrapolated to the Class, excluding interest and penalties, amounted to approximately $1,186,250.00 ($237,350.00 *5). *Id.*

### c.  Rest Break Claim

Regarding rest break violations, Plaintiff assumed a violation rate of one missed rest break per shift greater than 3.5 hours. The average wage rate for all employees during the Class Period was $17.30 per hour.  There were 56,365 shifts in the four-year statutory period. The total number of rest break violations in the four-year statutory period was 56,365. Thus, the total damages based on the 20% sample was $975,114.5. (56,365 *$17.3). When extrapolated to the Class, Defendants'

exposure for non-complaint rest periods, excluding interest and penalties, amounted to approximately $4,875,573 (975,114.5 x 5).

Defendants contended that they have a valid rest break policy and that they authorized and permitted rest breaks. Lipeles Decl., ¶ 15C.

### d. Failure to Provide Accurate Wage Statements Claim

Concerning the wage statement claim,[10] the putative class was comprised of approximately 546 current employees during the one-year statutory period. Defendants maintained that they provided accurate wage statements to their employees. The value of Plaintiff's wage statement claim was $2,184,000, calculated as follows: Current employees (546) * $4,000 = $2,184,000.00. Lipeles Decl., ¶ 15D.

### e. Failure to Pay Wages on Termination Claim

Concerning waiting time penalties, the putative class is comprised of approximately 768 former employees during the four-year period. Defendants contended that they paid their employees all wages due on termination. However, Plaintiff asserted that employees were not paid all wages due on termination. Plaintiff assumed 30 days per employee at 7.4 hours per day and a $17.30 average rate of pay. The potential value of the waiting time penalty claim[11] for the Class Members who are former employees of Defendant is $2,949,581.00, calculated as follows: 768 employees x 7.4 average hours per day * $17.3 * 30 days = $2,949,581.00. Lipeles Decl., ¶ 15E.

### f. Expense Reimbursement Claim

Plaintiff assumed there was $9.28 of unreimbursed cell phone use per week. There were 78,497 Workweeks in the Class Period through June 11, 2025.

---

[10] Labor Code §226(e) provides that an employee is entitled to recover $50 for the initial pay period in which a violation of Labor Code §226 occurs and $100 for each subsequent pay period, not to exceed $4,000, as well as an award of costs and reasonable attorneys' fees, for all pay periods in which the employer knowingly and intentionally fails to provide accurate itemized statements to the employee causing the employee to suffer injury. The wage statement violation claim is derivative of Plaintiff's other claims and depends on the actual number of violations found to exist.

[11] Under Labor Code 203(a), Plaintiff and the Class are entitled to one day's wages for each day he or she was not timely paid, not to exceed 30 days' wages.

1  According to Plaintiff's damages model, Defendants' exposure for unreimbursed cell phone
2  use, excluding interest, amounted to approximately $728,452.00 (78,497 * $9.28).

3  Plaintiff assumed there were 10 miles of unreimbursed vehicle use per week. The total for
4  unreimbursed mileage was $152,988.00 (22,834 workweeks * 10[12] *$0.67[13]). Defendants contended
5  that they implemented a fully compliant expense reimbursement policy, ensuring that employees are
6  compensated for out-of-pocket expenses. According to Plaintiff's damages model, Defendants'
7  exposure for vehicle use extrapolated to the Class, excluding interest, amounted to approximately
8  $764,940.00 ($152,988 * 5). Lipeles Decl., ¶ 15F.

### g.  Unlawful Deduction of Wages Claim

10  Plaintiff contends that Defendants unlawfully deducted wages from Plaintiff and Class
11  Members for "AFEE" and "ADMFEE" in the amount of $1.50 from every check. There were 16,952
12  pay periods through June 11, 2025. Thus, the total damages based on the 20% sample was
13  $25,974.00 (16,952 * $1.50).

15  According to Plaintiff's damages model, Defendants' exposure for unlawful deduction of
16  wages extrapolated to the Class, excluding interest, amounted to approximately $128,970.00
17  ($25,794.00 * 5). Lipeles Decl., ¶ 15G.

### h.  Reporting Time

19  Plaintiff contends that Defendants failed to pay Plaintiff and Class Members reporting time
20  pay. Defendants maintained that the applicable Wage Order does not provide a private right of
21  action. Plaintiff assumed 2 violations per pay period equaling 2 hours of pay per pay period. There
22  were 17,196 pay periods through June 11, 2025. Thus, the total damages based on the 20% sample
23  was $594,982.00 (17,196 * 2 * $17.3).

---

[12] Average Employee Commute Distance: https://www.zippia.com/advice/average-commute-time-statistics/

[13] Employee Commute Reimbursement Cost: http://www.irs.gove/tax-professionals/standard-mileage-rates

According to Plaintiff's damages model, Defendants' exposure for reporting time pay extrapolated to the Class, excluding interest, amounted to approximately $2,974,908.00 ($594,982.00 * 5). Lipeles Decl., ¶ 15H.

### i. Sick Pay

Plaintiff assumed $1.00 per hour of unpaid sick pay. There were 3,325.55 sick hours through June 11, 2025. Thus, the total damages based on the 20% sample was $3,326 (3,325.55 * $1/hour).

Defendants contended that Plaintiff's sick leave wages claim lacked settlement value since Plaintiff has no private right of action to bring a section 204 claim.[14]

According to Plaintiff's damages model, Defendants' exposure for sick pay extrapolated to the Class, excluding interest, amounted to approximately $16,628.00 ($3,325.55 * 5). Lipeles Decl., ¶ 15I.

The table below shows the maximum potential recovery on each claim alleged:

| CLAIMS | MAXIMUM POTENTIAL RECOVERY |
|---|---|
| Overtime Claim/Minimum Wages relating to Off the Clock work | $1,310,518.25 |
| Meal Breaks Damages | $486,476.00 |
| Interrupted Meals | $1,186,250.00 |
| Rest Breaks | $4,875,573.00 |
| Failure to Issue Accurate Itemized Wage Statements | $2,184,000.00 |
| Failure to Pay Wages on Termination | $2,949,581.00 |
| Expense Reimbursement Relating to Cell Phone Usage | $728,452.00 |

---

[14] *See e.g., Young v. ABM Sec. Servs.,* 1990 WL 89347, at *5 (9th Cir. June 28, 1990) (no private right of action against employers who violate Section 204); *Solis v. Gate Gourmet, Inc.,* 2024 WL 3184649, at *1 (N.D. Cal. June 26, 2024) ("there is no private right of action to enforce [section 204]"); *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011), aff'd, 546 F. App'x 613 (9th Cir. 2013) ("There is nothing in section 204 ... that indicates ... that a private right of action exists for violations of section 204.").

| | |
|---|---|
| Expense Reimbursement Relating to Vehicle Usage | $764,940.00 |
| Unlawful Deduction of Wages | $128,970.00 |
| Reporting Time | $2,974,908.00 |
| Sick Pay | $16,628.00 |
| **TOTAL DAMAGES/PENALTIES ON ALL CLAIMS:** | $17,606,296.25 |

However, as stated above, Plaintiff's claims for Reporting Time and Sick Pay were assumed to have no value, thus the total damages/penalties for claims that had value was $14,614,760.25.

**PAGA Penalties**

There were 768 former employees * $100 per penalty + $76,800. There were 11,002 pay periods * $100 per pay period + $1,100,200.00. Additional calculations were provided for other specific penalty items based on the employees involved and the frequency of violation. *See* Lipeles Decl., ¶ 32 and the PAGA table below.

| | | |
|---|---|---|
| PAGA for Waiting Time (768 former employees) | $76,800 | $100/$0 |
| PAGA for Overtime | $1,100,200 | $100/$100 |
| PAGA for Minimum Wage (based on 1,425 Pay Periods) | $142,500 | $100/$100 |
| PAGA for Meal Breaks (based on 2,055 Pay Periods) | $205,500 | $100/$100 |
| PAGA for Rest Breaks | $1,100,200 | $100/$100 |
| PAGA for Sick Pay | $1,100,200 | $100/$100 |
| PAGA for Wage Statements | $1,100,200 | $100/$100 |
| PAGA for Failure to Maintain Records | $1,100,200 | $100/$100 |
| PAGA for Reimbursements | $1,100,200 | $100/$100 |
| PAGA for Unlawful Deduction of Wages | $1,100,200 | $100/$100 |
| PAGA for Failure to Timely Pay Wages | $1,100,200 | $100/$100 |
| PAGA for Failure to Allow Inspection of Employment Records (based on 499 Pay Periods) | $374,250 | $750/$0 |
| **Total PAGA Penalties** | $9,600,650 | |

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

2
### F.  Summary of Settlement Terms

3
Under the terms of the Agreement, Defendants are discharged of all claims asserted in the

4
Action ("Released Claims") in exchange for paying the Total Settlement Amount ("TSA") of

5
$750,000.[15] From that amount, and subject to court approval, will be subtracted Plaintiff's Class

6
Representative Enhancement Award of up to $20,000, attorneys' fees to Plaintiff's Counsel of up to

7
$262,500, Plaintiff's Counsel's actual costs in an amount not to exceed $13,500, the Settlement

8
Administrator's costs in an amount not to exceed $14,500 and payment to the LDWA in the amount

9
of $50,000.00.[16] Sixty-five percent (65%) of the $50,000 PAGA Payment, $32,500, will be the

10
LWDA PAGA Payment and thirty-five percent 35% of the $50,000 PAGA Payment, $17,500, will

11
be distributed to the PAGA Members as Individual PAGA Payments.[17] The remainder after the

12
above-described reductions, *i.e.*, approximately $407,000, is called the Net Settlement Amount

13
("NSA"), which shall be distributed to all Participating Class Members.  The amount of the

14
payment to each Participating Class Member shall be calculated based on the number of

15
Workweeks the Class Member worked as a non-exempt hourly employee during the Class Period.[18]

16
Individual Settlement Payments will be calculated and apportioned by the Settlement

17
Administrator as follows:

18
After preliminary approval of the Settlement, using the Class Information (including

19
Defendants' timekeeping data), the Settlement Administrator will compute the total number of

20
Eligible Workweeks of all Class Members collectively during the Class Period, and this sum shall be

21
known as the "Initial Workweek Total"; the Initial Workweek Total will be rounded to the nearest

22
cent; the Settlement Administrator will divide the Net Settlement Amount by the Workweek Total to

23
determine the settlement value for each Eligible Workweek (the "Initial Workweek Value"); and the

24

25
[15] Agreement, ¶42.

26
[16] Agreement, ¶¶ 42, 59, 60- 61.

27
[17] Agreement, ¶ 59(a).

28
[18] Agreement, ¶¶ 13, 58.

Settlement Administrator will multiply the number of Eligible Workweeks of a Class Member during the Class Period by the Initial Workweek Value to determine that Class Member's estimated Individual Settlement Payment.[19]

After final approval of the Settlement, the Settlement Administrator will divide the Net Settlement Amount by the total number of Eligible Workweeks of all Participating Class Members collectively during the Class Period, and this sum shall be known as the "Final Workweek Total"; the Settlement Administrator will divide the final Net Settlement Amount by the Final Workweeks Total to determine the settlement value for each Eligible Workweek (the "Final Workweek Value"); the Final Workweek Value will be rounded to the nearest cent; and the Settlement Administrator will multiply the number of Eligible Workweeks of a Participating Class Member during the Class Period by the Final Workweek Value to determine that Participating Class Member's final Individual Settlement Payment.[20]

The average estimated amount per class member is $372.00.[21] Lipeles Decl. ¶ 26. There is **no reversion** to Defendants of any settlement monies.[22]

All Individual Settlement Payments paid to the Participating Class Members under this Settlement will be issued via check(s) and allocated as follows: twenty percent (20%) will be allocated as wages, for which there will be a W2 issued, and eighty percent (80%) will be allocated to alleged penalties and interest, for which an IRS Form 1099 will be issued if required by the Settlement Administrator.[23] If a Participating  Class Member fails to negotiate his or her check within 180 calendar days from the date of issuance, the unclaimed funds in the Qualified Settlement

---

[19] Agreement, ¶ 58(a).

[20] Agreement, ¶ 58(b).

[21] $407,000 (net settlement amount) /1,094(putative class members) = $372 (average award per class member).

[22] Agreement, ¶ 57(b). Any award of less than the amounts requested for the enhancement, administrator's costs, litigation costs or attorneys' fees will be part of the NSA and distributed to the Participating Class Members.

[23] Agreement, ¶ 62(a).

12

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Fund shall be tendered to The Justice Gap Fund maintained by The State Bar of California.[24]

In *Nachshin v. AOL, LLC* 663 F.3d 1034, 1039 (9th Cir. 2011) the court stated that *cy pres* distributions must take into account the nature of plaintiffs' action, the objectives of the underlying statutes and the interests of silent class members. The Justice Gap Fund is an appropriate *cy pres* beneficiary because there is a nexus between the plaintiff class and the *cy pres* beneficiaries since The Justice Gap protects employees' rights. *See* the Lipeles Declaration regarding detail as to why The Justice Gap Fund is an appropriate *cy pres*. Lipeles Decl. ¶34.

**G. Rule 23 Class Certification Requirements Are Met**

To determine the fairness of any settlement agreement calling for the creation of a settlement class, courts must decide whether the settlement class meets the requirements for class certification. *Hanlon v. Chrysler Corporation,* 150 F.3d, 1029-1120 (9th Cir. 1998). Here, the Settlement Class meets all of the requirements set forth in Fed. R. Civ. P. 23. Rule 23(a) sets forth four prerequisites for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Rule 23(b)(3) further provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

**(1)  Rule 23(a)(1) Numerosity**

Numerosity is easily satisfied because there are approximately 1,094 members in the Class.[25] *See, Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 members enough).

**(2)  Rule 23(a)(2) Commonality**

The settlement class satisfies commonality in that all Class Members share, *inter alia,* the

---

[24] Agreement, ¶ 64(a). The Justice Gap Fund is located at the following address: Office of Access & Inclusion- Greg E, Knoll Justice Gap Fund, The State Bar of California, 180 Howard Street, San Francisco, CA 94105.

[25] Lipeles Decl., ¶ 26.

following legal and factual questions: (1) whether Plaintiff and Class Members were subject to, and not exempt from, the overtime requirements of California law; (2) whether Defendants violated minimum wage requirements of California law; (3) whether Plaintiff and Class Members were afforded complaint meal breaks; (4) whether Plaintiff and Class Members were afforded compliant rest breaks; (5) whether Plaintiff and Class Members were provided with accurate itemized wage statements as required by Cal Labor Code §226(a); (6) whether Plaintiff and Class Members were paid all wages due upon separation of employment as required by Cal. Labor Code §§201-203; (7) whether Plaintiff and Class Members were reimbursed their necessary business expenses; (8) whether Plaintiff and Class Members were paid reporting time pay; (9) whether Plaintiff and Class Members' wages were unlawfully deducted; (10) whether Plaintiff and Class Members were paid all sick leave wages; (11) whether Plaintiff and Class Members' were allowed to inspect their employment records; and (12) whether Defendants violated §17200 *et seq.* of the California Business & Professions Code.

### (3)    Rule 23(a)(3) Typicality

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. Here, typicality is satisfied because Plaintiff's claims are the same as the claims that could be brought by Class Members.[26] Plaintiff worked as a typical non-exempt hourly employee, and as such was subject to the same policies and practices that gave rise to the claims of the Class. *Id.* All Class Members seek the same relief; damages for Defendants' failure to comply with wage and hour laws. Further, Plaintiff and all other Class Members allege the same injury.

### (4)    Rule 23(a)(4) Adequacy

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). Courts interpret this

---

[26] Lipeles Decl. ¶ 8.

requirement to mean that (1) the proposed class representatives and their counsel do not have conflicts of interest with the proposed class; and (2) the plaintiff and their counsel vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff does not have interests adverse to those of the Settlement Class.[27] Plaintiff was a typical non-exempt hourly employee, and like the other Class Members was subject to all the alleged policies and practices that gave rise to the Action. Where, as here, the claims of the Class Members and the Named Plaintiff are virtually coextensive, there is no conflict. *General Tel. Co. v. Falcon,* 457 U.S. 147, 157-8, n. 13 (1982). Additionally, Plaintiff understands the claims and theories that were alleged in the Action and has been involved at various stages throughout the litigation.[28] Likewise, Class Counsel has no conflicts of interest and has vigorously prosecuted the action on behalf of Plaintiff and the Settlement Class. Lipeles Law Group, APC, has significant experience litigating class actions and has been certified by numerous courts as competent and adequate class counsel.[29]

### (5)    Rule 23(b)(3) Predominance

Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). For common questions of law and fact to predominate, the issues that are subject to generalized proof should predominate over those subject to individualized proof. *Ortega v. J.B. Hunt Transport, Inc.,* 258 F.R.D. 361, 367 (2009) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 280 F.3d 124, 136 (2d Cir. 2001)). Accordingly, courts must determine whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of individual class members. *See, e.g., In re Lorazepam & Clorazepate Antitrust Lit.,* 202 F.R.D. 12, 29 (D.D.C. 2001).

Here, a common nucleus of facts and issues predominates over individual issues because

---

[27] Phillips Decl., ¶ 15.
[28] Lipeles Decl., ¶¶36-37; Phillips Decl., ¶¶ 5-12.
[29] Lipeles Decl. ¶ 5.

Plaintiff can establish his claims by focusing on Defendants' company-wide policies and practices that applied consistently and uniformly to all Class Members throughout the Class Period.

**(6)    Rule 23(b) Class Action is Superior**

To determine whether the class method is superior to other means of adjudicating the claims of many people, courts consider: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action. *J.B. Hunt,* 258 F.R.D. at 370. Here, the superiority requirement is satisfied because it would be highly inefficient for 1,094 Class Members to file individual cases; certification will provide the Settlement Class with a viable method of obtaining redress for their modest individual damages; and public policy supports the use of the class action device to secure the enforcement of statutes that focus on the workplace. *Hanlon,* 150 F.3d at 1023.

**III.    <u>THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL</u>**

Rule 23(e) states that a court may approve a class action settlement only if it finds the settlement fair, reasonable and adequate. Fed. R. Civ. P. 23 (e)(1)(A). The Ninth Circuit has a "strong judicial policy" favoring the settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The process by which the court makes this determination involves two steps: (1) there must be preliminary approval of the proposed settlement and of the Notice to be sent to class members, and (2) there must be a fairness hearing at which class members may be heard regarding the settlement and at which other evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is considered.

In connection with the first stage of the process, courts have determined that preliminary approval of the settlement and notice is appropriate if the proposed settlement: (1) falls within the range of possible approval, (2) appears to be the product of serious, informed and non-collusive negotiations, and (3) has no obvious deficiencies such as granting preferential treatment to

16

segments of the class, granting unduly preferential treatment to the class representatives, or awarding unreasonable attorneys' fees. *See Man. For Complex Lit.,* (3d ed.) §30.41; *Newberg on Class Actions,* (4th ed. 2002) §§ 11:24-25; *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009). Each of these requirements is met here.

## A. The Agreement is Within the Range of Possible Approval

To evaluate the "range of possible approval" criterion, which focuses on "substantive fairness and adequacy," courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer. *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080. If the settlement confers substantial benefit, while proceeding with litigation would impose significant risks, then the settlement falls within the range of approval. *Vasquez,* 670 F. Supp. at 1125.

In *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004) the court stated "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial".

Here, Defendants will pay $750,000 as consideration for the release of all asserted claims.[30] Once all the appropriate deductions have been made from the settlement fund, the amount available for distribution to the Plaintiff and settlement class is approximately $407,000.00. Each Class Member would receive on average an estimated $372.00.  Lipeles Decl., ¶ 25.

Here, the TSA as a percentage of the total potential exposure calculated by Plaintiff is approximately 5.1%.[31] As a result, this Settlement provides a recovery in the range that is as fair, reasonable and adequate, and is therefore entitled to preliminary approval.

---

[30] Agreement at ¶ 42.

[31] Lipeles Decl.,¶ 32. (Plaintiffs' estimated damages on claims that had value, excluding interest and penalties = $14,614,760.25. As such, $750,000/$14,614,760.25=5.1%). Importantly, at the time of mediation, Plaintiff ascertained that the minimum wage, reporting time pay and sick leave claims did not have value.

**B. The Proposed Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations**

This settlement was reached after the exchange of informal discovery, interviews of potential witnesses and class members, a class sampling, and a full-day mediation involving arm's-length negotiations between counsel that was facilitated by an experienced class action mediator. Lipeles Decl., ¶ 10. Settlement negotiations have been adversarial and non-collusive. Lipeles Decl., ¶¶ 18, 23. The Agreement and notice distribution plan result from an informed and thoroughly vetted analysis of the claims and defenses. Both parties are represented by independent counsel with considerable experience in litigating complex wage and hour class actions.[32] Counsel for both parties conducted significant informal discovery and undertook thorough and factual analyses prior to the commencement of settlement negotiations and mediation. The parties recognize that further litigation would be protracted and expensive, and they have taken into account the uncertainty and risks inherent in litigation, particularly in a class action such as this. Each of these facts support a finding that the settlement is the result of serious, informed, non-collusive negotiations. *See Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2013 WL 6114379, at *6 (N.D. Cal. Nov. 20, 2013); *Boring v. Bed Bath & Beyond of Cal. Limited Liability Co.*, No. 12-cv-05259-JST, 2013 WL 6145706, *7 (N.D. Cal. Nov. 21, 2013).

In this particular case, Plaintiff faced significant risks and uncertainty as a result of the following present factors: (1) Defendant was involved in a prior class action lawsuit entitled, *Maria Gloria F. Guinto v. C & K Market, Inc.* ("*Guinto Action*") which related to the majority of the claims alleged in this action by Plaintiff and which would have resulted in Plaintiff's claims period being limited to September 20, 2022 to the present[33]; (2) Plaintiff faced significant challenges to class certification due to Defendants' compliant policies and data, including sworn declarations from

---

[32]  Lipeles Decl., ¶¶ 5-6, 29.

[33] The following claims in this Action were not covered in the *Guinto Action*: (1) failure to provide meal breaks; (2) failure to provide rest breaks; (3) failure to pay reporting time; (4) failure to pay sick leave; and (5) failure to allow inspection of employment records.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

putative class members stating they received all breaks and did not work off the clock;  (3) Defendants provided a meal break policy that resulted in a compliance rate of 92.35%, an average meal break length of 56.2 minutes, and 4,217 meal break premium wages paid to employees for any discrepancies; (4) Defendants contended that the substantial majority of putative class members received compliant rest breaks; (5) Defendants never required its employees to work off the clock or use their personal cell phones for work related purposes; (6) the actual amount of PAGA penalties awarded by the Court is completely discretionary and there was no intentional wrongdoing by Defendants; and (7) Defendants maintained that Plaintiff's Reporting Time and Sick Pay claims did not have value. Lipeles Decl., ¶ 17.

**C.  The Agreement Contains No Obvious Deficiencies**

**1.  <u>The Agreement Does Not Grant Preferential Treatment to Segments of the Class</u>**

Under the terms of the Agreement, after costs, fees and the enhancement award have been paid, each Participating Class Member will receive a proportionate share of the NSA based on the number of weeks worked during the Class Period.[34] This methodology was adopted to reduce potential inequities between Participating Class Members and to optimize the award amount for each of them. Because each Participating Class Member's share of the NSA is based on a formula that includes the Workweeks specific to each member, no segment of the settlement class is given undue preferential treatment at the expense of others. As such, the Agreement contains a rational distribution mechanism and avoids any improper, preferential treatment to any part of the Settlement Class.

**2.  <u>The Agreement Does Not Grant Unduly Preferential Treatment to the Class Representative</u>**

Likewise, the enhancement award contemplated by the Agreement, if approved by this Court, would not constitute unduly preferential treatment in favor of Plaintiff. In order to determine the propriety of enhancement awards, a district court should consider the actions protecting class

---

[34] Agreement at ¶ 58.

interests, the benefit provided to the class based on those actions, and the amount of time and effort expended by the Plaintiff. *Staton v. Boeing Co.,* 327 F.3d 938, 976-77 (9th Cir. 1993).

Here, Plaintiff provided significant assistance to Class Counsel during this case. Specifically, Plaintiff undertook lengthy interviews with counsel, reviewed documents, remotely attended the all-day mediation and carefully considered, evaluated, and approved the terms of the Agreement on behalf of the Class.[35] These efforts were instrumental in securing the favorable terms of the Agreement, which will provide monetary compensation to a Class of approximately 1,094 current and former employees of Defendants. Moreover, Plaintiff is also generally releasing all claims thereby providing a more robust release than that of the Class.[36] In light of these efforts, the proposed Class Representative Enhancement Award of $20,000 to Plaintiff is reasonable and justifies preliminary approval.[37] These factors support the propriety of the enhancement award. *See Staton v. Boeing Co*., 327 F.3d 938, 976-77 (9th Cir. 2003).

### 3. <u>The Attorneys' Fees Under the Agreement Are Reasonable</u>

The proposed attorneys' fees should be preliminarily approved by this Court because they are reasonable and fair.[38] In cases that involve common funds, a court has discretion to award attorneys' fees as a percentage of the settlement. *See, Paul, Johnson, et al. v. Graulty,* 886 F.2d 268 (9th Cir. 1989). The court may consider: (1) whether counsel obtained excellent results for their client, (2) the risk involved in the representation, and (3) fees awarded in similar cases. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-50 (9th Cir. 2003). As a cross-check, the court may examine

---

[35] Phillips Decl., ¶¶ 7-10.

[36] Agreement at ¶ 51.

[37] *See, e.g. VanVranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award); *Stevens v. Safeway, Inc.,* 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008) (awarding enhancement payment of $20,000); *Linney v. Cellular Alaska Partnership,* 1997 WL 450064, *7 (N.D. Cal. 1997) ($25,000 in incentive payments approved); *In re Conseco Life Ins. Co. Cost of Ins. Litigation*, 2007 WL 3170134, *2 (CD. Cal. 2007) (25,000 incentive payments approved).

[38] Plaintiff intends to file and fully brief a motion for attorneys' fees prior to the final approval hearing and at least 14 days prior to the expiration of the deadline for class members to object to the settlement.

20

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff's Counsel's lodestar. *Id.* at 1047.

Here, Plaintiff's Counsel achieved an excellent result for the Settlement Class. The Settlement entitles Participating Class Members to awards averaging approximately $372.00. And, the payments to Participating Class Members are consistent with class settlements involving wage and hour claims approved by other federal courts in California.

Furthermore, the requested attorneys' fees amounting to 35% of the Settlement Amount are consistent with the fees awarded in similar cases. *See e.g., Gomez v. H & R Gunland Ranches, Inc.,* No. CV F 10-1163 LJO MJS, 2011 U.S. Dist. LEXIS 135424, *6 (E.D. Cal. Nov. 23, 2011) (awarding fees a 45% fee in a class settlement); *Qiuzi Hu v. Plehn-Dujowich,* No. 18-cv-01791-AGT, 2020 U.S. Dist. LEXIS 260177, at *6-8 (N.D. Cal. Mar. 2, 2020) (approving a 43% fee in a $680,000 settlement); *City of v. SimplexGrinnell LP,* No. 11-cv-1854, 2015 U.S. Dist. LEXIS 192870, at *18-19 (N.D. Cal. Sept. 3, 2015) (award of 38.8% of $4.9 million fund); *Rabin v. PricewaterhouseCoopers LLP,* No. 16-cv-02276-JST, 2021 U.S. Dist. LEXIS 41285, at *22-27 (N.D. Cal. Feb. 3, 2021) (award of 35% of $11.6 million fund). A review of recent California district court cases "reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million." *Cicero v. DirecTV, Inc.,* 2010 U.S. Dist. Lexis 86920 at *17 (C.D. Cal. 2010). Importantly, Plaintiff's retainer agreements with Plaintiff's Counsel stipulates to attorneys' fees of up to 35%.[39] Plaintiff's Counsel has delineated attorneys' fees through the present time in the Declaration of Kevin Lipeles. Lipeles Decl., ¶ 43.

## IV.    APPROVAL OF NOTICE OF SETTLEMENT AND RELATED FORMS

### A.  Administration of Notice, Objections and Claims

The parties have selected Phoenix Class Action Administration Solutions ("Phoenix"), an

---

[39] Lipeles Decl., ¶45. Moreover, the fees requested here are consistent with the awards obtained in similar class actions. Lipeles Decl., ¶44.

experienced claims administrator, to serve as the Settlement Administrator.[40] Within twenty-one

(21) calendar days of preliminary approval of the Settlement, Defendants will provide Phoenix with

the full name, last known home address, last known telephone number, the last four digits of the

Social Security number, dates of employment during the Class Period, and the total weeks worked

during the Class Period for each Class Member and PAGA Member ("Class Information").

Agreement, ¶53. Phoenix will mail all Class Members the Notice.[41] Class members have forty-five

(45) calendar days from the Notice mailing to submit an objection or request for exclusion.[42]

The Notice informs each Class Member of his or her right to object to or request exclusion

from the settlement. Class Members who wish to object to or request exclusion from the Settlement

must object or request exclusion and the objection or request for exclusion must be postmarked no

later than forty-five (45) calendar days after the mailing of the Notice.[43] Otherwise, Class Members

shall be deemed to have waived any objections and request for exclusions and shall be foreclosed

from making any objection to the Settlement.[44]

**B.  The Court Shall Direct Distribution of the Notice**

This Court should order distribution of the proposed Notice in the manner described in the

Agreement. Fed. R. Civ. P. 23 (e)(1)(B) requires the Court to direct notice to class members "in a

reasonable manner." *See also, Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173 (1974). Notice by

mail provides adequate "individual notice to all members." *Id.* Where the names and addresses of

the class members are ascertainable, individual notice through the mail is "clearly the 'best notice

practicable.'" *Id.* at 175. If notice by mail is ordered and addresses are available, as here,

---

[40] Lipeles Decl., ¶27.

[41] Attached as Exhibit A to the Agreement. *See* Agreement, ¶ 22.

[42] Agreement, ¶ 38.

[43] Agreement, ¶53 (e), (f)(1), (2), ¶ 22, Exhibit A.

[44] Agreement, ¶53 (e) (2), (f) (3) Class Members also have the right to challenge their Workweeks and the data used to calculate their Eligible Workweeks. Agreement, ¶ 34.

publication of notice is not necessary and is, in fact, "duplicative and serve[s] no purpose." *U.S. v. Truckee-Carson Irrigation Dist.,* 71 F.R.D. 10, 18 (D. Nev. 1975).

Here, the Class Members' names and last-known addresses are ascertainable. The Class Members are current or former employees of Defendants, whose names, last known addresses, and social security numbers Defendants maintain in their personnel files. Although some Class Members' addresses may have changed, their social security numbers have not. Per the Agreement, the Administrator will use its best efforts to locate Settlement Class Members and re-send the Notice. Agreement, ¶ 53(b). The proposed Notice fairly and accurately summarizes the terms of the Agreement and the Class Members' rights (including procedures for requesting exclusion from, or objecting to, the Agreement). Under these circumstances, Plaintiff submits that notice by mail is sufficient to comply with the requirements of Rule 23 and due process, and that notice as proposed should be approved.

## C.  The Proposed Notice Is Appropriate

Fed. R. Civ. P. 23 (c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Notice fully complies with due process and Fed. R. Civ. P. 23. The Notice provides specifics regarding the date, time, and place of the Final Approval Hearing, and informs Class Members that they may enter an appearance through counsel. *See* Agreement, Exhibit A. The Notice informs Class Members how to exercise their rights, make informed decisions regarding the proposed Agreement, and tells them that if they do not opt out, the judgment will be binding upon them. *Id*. The Notice informs the Settlement Class about the

23

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

application of Plaintiff's Counsel for reimbursement of attorneys' fees and costs from the TSA, as well as the amount sought. *Id*. The Notice describes the terms of the Agreement, informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member. *Id*.

The detailed information in the Proposed Notice is more than adequate to put Class Members on notice of the Agreement. *See, e.g., Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the… settlement" satisfies standards).

**D. The Court Should Set A Final Approval Hearing**

Finally, this Court should set a hearing for final approval of the Agreement in January 2026, or at the earliest available time for the Court. In order to have time for the notice dissemination process to be completed, for the parties to review any objections and prepare responses, and for Plaintiff to prepare papers supporting final approval, Plaintiff proposes that the Court should set the final approval hearing in or after January 2026, and allow the parties to file any final approval papers for the hearing twenty-one (21) days before the hearing.[45] These dates would allow a reasonable period for mailed notice and for Class Members to object to or opt-out of the settlement, but would not unduly delay the Class Members' receipt of individual settlement awards.

**V.    CONCLUSION**

For the reasons discussed above, Plaintiff requests that the Court enter an order of preliminary approval of the class action settlement, approve the form of the proposed notice, and approve the proposed schedule, including setting a date for a final approval hearing.

Dated: August 21, 2025                    Respectfully submitted,

LIPELES LAW GROUP, APC

By: _____
              Kevin Lipeles, Esq.

---

[45] The fees motion will be filed earlier, at least 14 days before the expiration of the deadline for Class Members to object to the settlement.