United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ALLEN PHILLIPS,<br>Plaintiffs,<br>v.<br>C&K MARKET, INC.,<br>Defendants. | Case No. 25-cv-01868-EMC<br><br>**ORDER GRANTING FINAL APPROVAL**<br><br>Docket No. 47 |

Before the Court is Plaintiffs' motion for final approval of a class action settlement and for fees. Dkt. Nos. 47, 45. For the reasons stated below, Plaintiffs' motion for final approval is **GRANTED**; the fees motion is **GRANTED** in part and **DEFERRED**.

## I. BACKGROUND

This wage and hour class action was filed on February 21, 2025. Dkt. No. 1. Four months later, on June 20, 2025, the parties announced that they had reached conditional settlement. Dkt. No. 17. Exactly six months after filing the lawsuit, on August 21, 2025, Plaintiff filed a motion for preliminary settlement approval. Dkt. No. 21. The settlement provides for a $750,000 fund for 750 class members. Dkt. No. 47-2 ¶ 37. A prior wage and hour class settlement against the same defendants was approved in *Guinto v. C&K Market, Inc.*, Case No. SCCV-CVCV-2021-0964 (Siskiyou County Superior Court) on December 16, 2024 and resolved the same claims for a non-overlapping class period ending September 19, 2022. *See* Dkt. No. 37 at 2.

The Court ordered supplemental briefing on the issue of whether the class met Rule 23's predominance requirement. Dkt. No. 24. Plaintiff filed a short brief that failed to provide "Plaintiff's factual support for his contention that there were 'company-wide policies and practices

that applied consistently and uniformly to all Class Members throughout the Class Period'" as ordered. Dkt. No. 25. The Court accordingly issued a second order for supplemental briefing, again instructing Plaintiff to provide factual support that there was a widespread practice sufficient to satisfy Rule 23. Dkt. No. 26. Upon receiving Plaintiff's second supplemental brief, the Court ordered Plaintiff's counsel to be prepared to discuss certain issues at the hearing, including "all evidence counsel relied on to assess the value of the claims, beyond the Meal Break claim, that justify Plaintiff's highly discounted settlement; (2) counsel's legal basis for assigning the Sick Leave and Reporting Time claims no value […]; (3) the appropriateness of mail-only notice and whether a short form notice should be provided; and (4) the specific litigation costs counsel seek to recover." Dkt. No. 31.

At the hearing, the parties provided additional evidence that counsel had relied on to assess the claims. The parties represented that they had exchanged informal discovery that included hard data showing that Defendants had a more than 90% meal break compliance rate, as well as ten sworn declarations from a cross-section of employees regarding the meal break, rest break, off-the-clock, and reimbursement claims. Dkt. No. 32. Plaintiff's counsel also explained that one claim, the Reporting Time claim, "faced additional issues including a pleading defect by counsel in not alleging the correct labor code section which raised problems with asserting a private right of action." Dkt. No. 32. These obstacles presumably justified the discount in value obtained under the settlement. The Court instructed the parties to submit a revised proposed preliminary approval order that included a short form class notice which stated the total monetary settlement and the expected average individual recovery and provided for email notice and electronic opt-out. *Id.* Plaintiff's submitted "short form notice" was overly lengthy. Dkt. No. 33. The Court ordered the parties to submit a revised short form notice that was postcard length. Dkt. No. 34. The Court then granted the motion for preliminary approval. Dkt. No. 36.

On March 16, 2026, the class administrator, Phoenix, mailed the short-form notice to the class members by first class mail. Dkt. No. 53. Eleven notices were returned as undeliverable. *Id.* For these addresses, Phoenix conducted skip tracing to obtain updated addresses and re-mailed the notices. *Id.* None of the notices to the updated addresses were returned as undeliverable. On

United States District Court
Northern District of California

April 24, 2026, Plaintiff submitted a declaration that the class administrator had inadvertently failed to email notice to the class members and that it had email addresses for only 456 of the 750 class members. Dkt. No 42. The hearing was continued to allow time for the administrator to provide email notice to these class members. Dkt. No. 44. The Class Administrator emailed notice to these 456 class members on May 5. Dkt. No. 53. No objections to the settlement have been filed. *Id.*

On July 2, 2026, the Court held a final approval hearing. No objectors appeared at the hearing. During the hearing, Plaintiffs were unable to answer the Court's questions about their distribution plan. On August 11, 2026, the Court held a follow-up status, at which the administrator appeared. The Administrator stated that for uncashed checks, the Administrator will conduct skip-tracing on those Class Members and if updated addresses are found, will send checks to the updated address. Defendant will work with the Administrator to provide additional email and phone and any other information available from its personnel file records. The Administrator will use with information to send further notice by email and text.

## II. <u>DISCUSSION</u>

### A. Final Approval

In order to grant approval, the Court must find that the proposed Settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate—taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). In assessing fairness of a settlement, courts weigh: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal citations omitted).

The Court has already determined that the settlement is fair, reasonable, and adequate under Rule 23(e)(2) when "balanced against the probable outcome of further litigation relating to liability and damages issues." Dkt. No. 36 at 4. The discovery exchanged by the parties, which supported Defendants' claims of high compliance, "justifie[d]the proportionately low settlement amount relative to the total value of the claims initially asserted." *Id.* The Court recognized that this early settlement benefited the parties and the class by avoiding incurring further litigation costs as well as the delays and risks of litigation. *Id.* The settlement was conducted at arms length, it contains no reversion to Defendant, and the attorney fees paid are subject to approval by this Court. The method of distribution is also equitable. The amount paid to each class member is determined using a formula based upon the number of workweeks each class member was employed by Defendant during the Class Period. Dkt. No. 47-1. Each Class Member's notice included an estimate of the monetary amount they were to receive under the Settlement and the estimated average payout per class member. *Id.* The Court reviewed Plaintiff's short and long form notice form and deemed them adequate to provide notice.

There have been no developments since the Court granted preliminary approval that disturb the Court's finding that the proposed settlement is fair and adequate. No objections have been received to the proposed settlement and no objectors appeared at the Final Approval Hearing. Through the Administrators, counsel has, at least on its face, provided mail notice to all of the class members, with no undelivered notices, as well as email notice where emails were available. This notice was reasonably calculated under the circumstances to apprise the Class Members of this action, the terms of the Settlement, their right to object or opt-out, that failing to opt-out will lead to a release of claims, and their right to appear at the Final Approval Hearing. Dkt. No. 35.

In short, in view of the Court's preliminary approval, the favorable reaction of the class, and the adequacy of notice provided to the class, Plaintiffs' motion for final approval of the class

settlement is **GRANTED**.

**B. Fees Motion**

1. Attorney Fees

Courts have an independent duty to determine that attorneys fees awards pursuant to Rule 23(h) are reasonable. *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 929 (9th Cir. 2020). Close scrutiny is called for, given the potential adversarial relationship between class counsel and class members when fees are drawn from a common fund. *Id.* In common fund settlements, a percentage-of-recovery award is common since the benefit to the class is easily quantified. *In re Bluetooth*, 654 F.3d at 942. The Ninth Circuit has established 25% of the fund as the typical "benchmark" for this method, providing, however, that an adequate explanation in the record of any "special circumstances" may justify a departure. *Id.*

To assess requests for attorneys' fees calculated pursuant to the percentage-of-recovery method, courts consider (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis. *In re Optical Disk*, 959 F.3d at 930. Of these factors, the first—the results obtained for the class—is the "most critical." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The Ninth Circuit has encouraged courts using the percentage-of-recovery method to perform a cross-check with the lodestar method to confirm that the requested award is reasonable. *In re Optical Disk*, 959 F.3d at 929.

Plaintiffs seek fees of $262,500.00, approximately 35% of the $750,000 settlement fund. They submit a lodestar of $138,640 in fees for 180.4 hours of time; the requested fee represents a 1.9 fee multiplier. Dkt. No. 45 at 8. Time was billed at $850 by the senior attorneys on the case and $250 for paralegals, with no associate time billed on the case. Dkt. No. 40-1 ¶ 19.

The 35% of the fund that class counsel requests represents a significant upward departure from the benchmark. The factors courts consider in applying the percentage-of recovery approach

do not warrant such an upward departure. First, and most importantly, Plaintiffs' counsel did not obtain exceptional results for the class. Counsel have submitted that their case was worth roughly $14-24 million but settled it for a fund of less than a million, a 3-5% recovery rate. In assessing preliminary approval, the Court determined that the merits issues that counsel learned of during discovery justified the low rate of recovery. But, while adequate, the settlement cannot be considered "exceptional." As to the second factor, the case could be considered risky, due to the merits issues discussed above. However, the parties reached settlement after only four months. Plaintiffs' counsel did not undertake a meaningful degree of risk and resources in prosecuting this case. Further, at the time counsel filed the action, Defendant had already been successfully sued for workplace violations and entered into a settlement in a virtually identical case. This context further supports that this case was not a high risk for class counsel. The fourth and sixth factors merge here, since counsel handled the matter on a contingent basis and assert that the market rate for contingent cases generally is 35-40%. *See* Dkt. No. 45 at 7. Counsel does not support their market rate assertion with evidence of any of their contingency fee arrangements. Finally, on the fifth factor, counsel did not experience notable burden in litigating this case. As already mentioned, counsel filed suit, went into early settlement talks, and obtained a settlement in principle within just four months. No special circumstances suggest an upward departure is warranted from the 25% benchmark.

Indeed, the circumstances of this case may support a downward departure from the 25% benchmark (which would be $187,500 and represent a 1.3 multiplier of the $138,640 lodestar) for several reasons. First even a 25% recovery exceeds the lodestar in this case. A 1.3 multiplier would likely not be justified in this case for the reasons stated above with respect to the percentage-of-recovery factors. Furthermore, Plaintiffs' counsel has not litigated this case, including securing this Courts approval, efficiently. Counsel admitted that one of their claims was rendered unviable because of counsel's pleading error. Dkt. No. 32. Plaintiff's counsel also failed to adequately support their proposed settlement in their filing. Two rounds of supplemental briefing and an extended hearing were required before the Court could find that the requirements of certification and class approval were met. Counsel also failed to conduct the notice process in a

United States District Court
Northern District of California

diligent or timely fashion. Counsel did not provide for email notice to the class until prompted by the Court. They then failed to provide that email notice, delaying the approval process for months. At the hearing for final approval, Plaintiffs were unprepared to answer basic questions about their notice regime. The Court still has concerns about the ultimate rate of fund redemption by the class members in this case, which under a diligently pursued distribution plan should be high, given the lack of a claims process. The Court will not be able to fully assess the results obtained for the class — perhaps the most important factor in assessing attorney fees — until funds have been distributed and the rate at which funds have been claimed is known. Accordingly, the Court **DEFERS** a final calculation of Plaintiffs' fees until after distribution.

2. Attorney Costs

Plaintiff's counsel also seek costs of $13,500. Counsel provides an index of the costs sought, which are primarily payments reflecting mediation fees and court reporting costs, which are acceptable to claim. Plaintiffs' motion for costs is **GRANTED**.

3. Service Award

Finally, Plaintiff's counsel seeks a service award of $20,000 for their lead plaintiff. Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Gergetz v. Telenav*, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009)). In determining whether to exercise discretion in providing such awards, courts consider five factors: (1) the risk to the class representative in commencing suit (financial or otherwise); (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). "Courts in this district have typically found that a service award of $5,000 is a presumptively reasonable amount, such that there must be a showing justifying an award beyond this amount." *Marron v. Healthsource Glob. Staffing, Inc.*, No. 19-cv-01534-KAW, 2025 U.S.

Dist. LEXIS 154859, at *18-19 (N.D. Cal. Aug. 11, 2025). Such a showing is typically made when the plaintiff goes close to or through trial. *See e.g.*, *Ridgeway v. Wal-Mart Stroes Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2014) (awarding $15,000 to each of nine class representatives in a case that resulted in a $60 million common fund after trial).

Here, the class representative was not subject to risk or notoriety, and did not contribute substantial time and effort to the litigation. Plaintiff states that he spent a total of 35 hours assisting the litigation, during which "he participated in several lengthy interviews and phone conferences over a period lasting several months, searched for and produced a significant amount of relevant documents, reviewed pleadings in the case, reviewed documents and data provided by Defendants, communicated about the case with Class Members, kept in contact with Class Counsel regarding the status of the case, and remotely attended the all-day mediation on June 11, 2025." Dkt. No. 40-2, Declaration of Eric Allen Phillips, ¶16. Plaintiff did not spend days or weeks away from home testifying at trial, as did the class representatives in *e.g. Del Valle v. GM LLC, No. 16-cv-07244-EMC*, 2025 U.S. Dist. LEXIS 199809, at *17 (N.D. Cal. Oct. 8, 2025). He was not deposed. The circumstances here do not support an award above $5,000, the presumptively reasonable amount. Plaintiff does note that he signed a general release, which is broader than the release given by the other class members, but a $5,000 service award – relative to an anticipated class payment of less than $1,000 – is adequate compensation for this broader release. This is particularly so where, as here, the Plaintiff has not identified what claims of value beyond the class claim he released.

## III. <u>CONCLUSION</u>

The Court hereby:

1. Grants final approval of the class action settlement set forth in the Class Representative Action Settlement Agreement and Release, a true and correct copy of which is filed on the public docket at Dkt. No. 47-2;

2. Finds that the notice provided to the Class complies with Fed. R. Civ. P. 23(c) and (e) and was reasonable notice under the circumstances;

United States District Court
Northern District of California

3. Directs payment to the Class Members as provided for in the Settlement Agreement; and

4. Directs payment to Phoenix Class Action Administration Solutions for its services as the Administrator.

5. Grants Plaintiffs' motion for costs and grants lead plaintiff Mr. Phillips a service award of $5,000

6. Defers ruling on Plaintiffs' motion for fees until after distribution is complete.

A status conference for Post-Distribution accounting shall take place on 9/29/2026 at 2:30pm. The partis shall submit a status report 7 days beforehand.

**IT IS SO ORDERED**.

Dated: 8/14/2026

EDWARD M. CHEN
United States District Judge